808 F.2d 438
 55 USLW 2479, RICO Bus.Disp.Guide 6519
 G.M. ATKINSON and E.D. Atkinson, Individuals, d/b/a Lazy Le
Cattle Company, and d/b/a Atkinson Cattle Company,
and Vivian Atkinson, an Individual,
Plaintiffs- Appellants,
v.
ANADARKO BANK AND TRUST COMPANY, a State Bank, Defendant-Appellee.
 No. 86-1116.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 28, 1987.
 
 Philip R. Russ, Law Offices of Philip R. Russ, Amarillo, Tex., for plaintiffs-appellants.
 J. Michael Medina, Frederic Dorwart, Tulsa, Okl., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before CLARK, Chief Judge, REAVLEY, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs G.M. and E.D. Atkinson obtained a jury verdict in district court awarding them actual damages of $2,899,796.63 against the defendant, Anadarko Bank and Trust Company (Anadarko), for a violation of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. Sec. 1962(c).[1] The jury found that Anadarko had violated RICO by mailing false and fraudulent statements charging a rate of interest on loans made to plaintiffs in excess of what the parties had agreed on. The jury also found against Anadarko on issues of breach of contract and common law fraud. The district court granted judgment notwithstanding the verdict in regard to the finding of a RICO violation, leaving intact the jury findings of common law fraud and breach of contract. In doing so, it reduced plaintiffs' damages to $18,100.83, the difference between the rate of interest wrongly charged and that which should have been charged. This amount was then offset against the amount due Anadarko on the loans it made to plaintiffs. Plaintiffs appeal. We affirm.
 
 I.
 
 2
 Anadarko agreed in October 1982 to loan plaintiffs money to finance their cattle business. The loans in question were evidenced by the execution of two promissory notes of $1,300,000 and $500,000, respectively. Under this line of credit on these loans, plaintiffs had borrowed a total of $3,458,880.53 as of October 1983. Of this total, they had repaid Anadarko $2,710,268.35 in principal. In October 1983, Anadarko refused to extend further credit to the plaintiffs to finance their cattle business.
 
 
 3
 In March 1984, plaintiffs filed this lawsuit, alleging civil RICO violations and the charging of usurious interest. Plaintiffs' original complaint alleged that the culpable person, Anadarko Bank, was also the enterprise. The district court correctly noted that the culpable person cannot constitute the enterprise under Sec. 1962(c). Bishop v. Corbitt Marine Ways, Inc., 802 F.2d 122, 122-23 (5th Cir.1986). Plaintiffs amended their complaint to allege an "association in fact" enterprise which was guilty of RICO violations and common law fraud. Anadarko filed a counterclaim, seeking recovery of the amount due on the promissory notes.
 
 
 4
 The district court reserved judgment on Anadarko's counterclaim and submitted issues covering the alleged RICO violation, common law fraud, and breach of contract to the jury. The jury found in favor of the plaintiffs and awarded them $2,899,796.63 in actual damages for Anadarko's alleged violation of RICO. Specifically, the jury found that Anadarko committed mail fraud by mailing false and fraudulent statements of the interest owed on the two loans.
 
 
 5
 This miscalculation of interest was due to the fact that Anadarko had charged the Atkinsons a rate of interest based on the local prime rate of the National Bank of Oklahoma City instead of the lower national prime rate, which the promissory notes and loan agreements contemplated. This miscalculation of interest resulted in an overcharge of $18,100.83.
 
 
 6
 Upon Anadarko's motion for judgment notwithstanding the verdict, the district court first found that the evidence adduced at trial supported the jury's findings of common law fraud and breach of contract with respect to the mailings of false and fraudulent statements charging the higher interest. The court, however, limited plaintiffs' damages to the interest overcharge of $18,100.83, which was to be offset against the amount due Anadarko on the promissory notes.
 
 
 7
 The district court then found that the evidence did not support the jury's finding that Anadarko had violated RICO. Specifically, the court found that plaintiffs did not establish that Anadarko Bank, its holding company, Anadarko Bankshares, Inc., and three bank employees--E. Glen Price, Calvin Campbell, and James Decker--constituted an enterprise separate and distinct from the bank itself. Accordingly, it granted Anadarko's motion with respect to the finding of a RICO violation.[2]
 
 
 8
 Finally, the district court found in favor of Anadarko on its counterclaim, awarding the bank the amount of $1,064,546.23--the amount due on the notes computed by using the national prime rate less the offset to which plaintiffs were entitled. The court also denied plaintiffs attorney's fees as found by the jury and upheld the jury's award of fees to Anadarko of $55,797.96 incurred in the collection of the notes.
 
 II.
 
 9
 On appeal, the plaintiffs challenge the district court's determination that the evidence did not support a finding of a RICO violation and did not support the award of damages in the amount of $2,899,796.63. They also contest the court's judgment on Anadarko's counterclaim and its decision to award Anadarko attorney's fees and deny them the same.
 
 
 10
 In reviewing the district court's judgment notwithstanding the verdict, we consider all of the evidence in a light most favorable to the party that opposed the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict, the granting of the motion was proper. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969).
 
 
 11
 Plaintiffs contend that the evidence established the existence of an enterprise in the form of an association in fact. They claim that Anadarko Bank, its holding company, and the three employees were an enterprise separate and distinct from Anadarko Bank. They argue that the defendant bank, the holding company, and the three employees conspired to defraud plaintiffs through the use of the mails by charging a rate of interest in excess of the agreed rate.
 
 
 12
 The existence of an enterprise is an essential element of a RICO claim. 18 U.S.C. Sec. 1962(c); Sedima v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). To establish an "association in fact" enterprise under 18 U.S.C. Sec. 1961(4)[3] plaintiffs must show "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981); Shaffer v. Williams, 794 F.2d 1030, 1032 (5th Cir.1986). The enterprise must be "an entity separate and apart from the pattern of activity in which it engages." Turkette, 452 U.S. at 583, 101 S.Ct. at 2529.
 
 
 13
 The record here contains no evidence that the bank, its holding company, and the three employees were associated in any manner apart from the activities of the bank. Plaintiffs wholly failed to establish the existence of any entity separate and apart from the bank. In this case, the alleged racketeering activity forming the predicate of the RICO charge was mail fraud--the mailing of false statements requesting payment of interest in excess of the agreed amount. The mailing of loan statements was an activity of the bank. There is no evidence of any other activity on the part of the alleged enterprise.
 
 
 14
 In addition, there was no evidence presented that the five associates functioned as a continuing unit or formed an ongoing association. No connection was shown between the three individuals and the holding company. The only fact implicating the holding company in the alleged association was its purchase of shares of plaintiffs' notes from the bank. Reasonable jurors could not have found the existence of an enterprise separate and apart from the bank. The district court correctly set aside the jury's finding of a RICO violation.
 
 
 15
 Plaintiffs assert in their brief that Anadarko breached an agreement to charge interest on the basis of a 365-day year by charging interest calculated on a 360-day year. The jury, however, found against plaintiffs on this issue, and plaintiffs do not contest that finding on appeal.
 
 
 16
 Plaintiffs also argue that the damages for Anadarko's common law fraud and breach of contract should not have been limited to $18,100.83. Plaintiffs cannot recover the same damages twice, even though recovery is based on two different theories. Alcorn County v. U.S. Interstate Supplies, Inc., 731 F.2d 1160, 1171 (5th Cir.1984). Plaintiffs further suggest that they are entitled to the $2,899,796.63 jury verdict for Anadarko's breach of contract and common law fraud. These damages, however, were only for the alleged RICO violation. There was no evidence of any other injury to plaintiffs' property or business caused by the breach of contract or the common law fraud. The district court correctly held that plaintiffs are limited to a single recovery of $18,100.83.[4]
 
 
 17
 Plaintiffs ask this court to set aside the district court's judgment in favor of Anadarko on its counterclaim. Plaintiffs submit that the findings of common law fraud and breach of contract should prevent Anadarko from recovering the amount due on the notes. They claim they were induced to enter into the loan agreements by Anadarko's promise of a five-year loan commitment. This issue was neither raised in the pleadings nor submitted to the jury. The only part of the transaction which was found to be improper was that the loans would carry an interest rate slightly lower than the interest rate which was actually charged. Anadarko disputed that this was the agreement, but the jury permissibly resolved this issue, against Anadarko. Its significance as an inducement to the overall transaction is de minimis. The court's judgment on Anadarko's counterclaim awarded Anadarko $1,064,546.23, which correctly represented the amount due on the notes less the overcharge offset of $18,100.83.
 
 
 18
 Finally, plaintiffs challenge the district court's adjudication regarding attorney's fees. The jury awarded plaintiffs attorney's fees of $21,176.65 and awarded Anadarko $55,797.96 in fees. Plaintiffs ask this court to readjust their fees upward and deny Anadarko any fee recovery because of its alleged RICO violation, breach of contract, and common law fraud.
 
 
 19
 The district court correctly held that plaintiffs are not entitled to recover attorney's fees under Oklahoma law, which the notes agree will provide the governing law. Oklahoma law states that attorney's fees are not recoverable for breach of contract or common law fraud causes of action. Okla.Stat. tit. 12, Sec. 936. Anadarko, on the other hand, is entitled to recover attorney's fees in the amount of $55,797.96, as found by the jury, incurred in the collection of the note. Okla.Stat. tit. 15, Sec. 276.
 
 III.
 
 20
 The district court correctly set aside the jury's verdict because the evidence did not support a finding of a RICO violation. The record contains no evidence that Anadarko Bank, Anadarko Bankshares, and the three employees were an "association in fact" enterprise separate and distinct from the bank. The court correctly limited plaintiffs to a single recovery of $18,100.83 for the interest overcharge. These were the only damages supported by the evidence. The court correctly awarded Anadarko recovery on the promissory notes, less the offset to which plaintiffs were entitled. Finally, the court correctly denied plaintiffs attorney's fees, but properly entered judgment on the jury's award of fees to Anadarko.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 This subsection provides:
 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 This award was subject to trebling under 18 U.S.C. Sec. 1964(c), which provides that
 [a]ny person injured in his business or property by reason of a violation of section 1962 ... shall recover threefold the damages he sustains....
 
 
 [2]
 The district court further noted that, even if there were a RICO violation in this case, the evidence did not support the jury's finding of damages in the amount of $2,899,796.63. Rather, it noted, in such a case damages would be limited to the difference between interest charged and what should have been charged
 
 
 [3]
 (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity; .... [emphasis added]
 
 
 [4]
 Plaintiffs dispute the district court's observation that, even if plaintiffs had successfully established a RICO violation, actual damages would still be limited to the interest overcharge of $18,100.83. Plaintiffs submit that the court based its reasoning solely on the fact that there was no RICO violation. This contention is not well taken. The court correctly noted that the only damages arising from the commission of the predicate act of the mail fraud was the interest overcharge. Plaintiffs' complaint sought only the trebled difference between the interest they paid and what they should have paid, and there was no evidence of other injury to plaintiffs' property or business proximately caused by the mailings of the interest overcharges. In any event, because there was no RICO violation, there could be no RICO damages