**In re John Wilford POSEY, Audrey Marie Posey, d/b/a Delta Outdoorsmen, Debtors.**

**Audrey Marie POSEY, Plaintiff,**

**v.**

**BANK OF SHAW, A BRANCH OF the GRENADA BANK, Defendant.**

**Bankruptcy No. S85–20065.**

**Adv. No. 86–0035.**

United States Bankruptcy Court, N.D. Mississippi.

Dec. 9, 1987.

W. Stephens Cox, Merkel & Cocke, Clarksdale, Miss., for Audrey Marie Posey.

Charles J. Swayze, Jr., Whittington, Brock, Swayze & Dale, Greenwood, Miss., for Bank of Shaw.

## MEMORANDUM OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for consideration the motion for partial summary judgment filed by the defendant, Bank of Shaw, a branch of the Grenada Bank, hereinafter referred to as Grenada Bank; response to said motion having been filed by the plaintiff, Audrey Marie Posey, hereinafter referred to as plaintiff or debtor; both parties having submitted memoranda of law and supporting affidavits; and the Court having considered same, as well as, the testimony adduced at earlier hearings resulting from a contested proceeding initiated by the defendant, hereby finds, orders, and adjudicates as follows, to-wit:

## I.

The Court has jurisdiction of the subject matter and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a non-core proceeding as discussed in 28 U.S.C. § 157(c)(1), but the parties have consented that this proceeding might be fully tried in this Court as contemplated in 28 U.S.C. § 157(c)(2), subject to appellate review pursuant to 28 U.S.C. § 158.

## II.

### STATEMENT OF FACTS

The plaintiff's husband, John W. Posey, also a debtor herein, and his business partner—stepson, Daniel R. Watkins, entered into several loan transactions with Grenada Bank, dealing primarily with the bank's vice president at its Shaw branch, Glenn Sandroni. The initial arrangements called for the bank to make interim financing loans to Posey and Watkins so that they could acquire inventory, furniture, and fixtures in order to commence their sporting goods business, known as the Delta Outdoorsmen. Permanent financing was to be obtained through a direct loan to be negotiated with the United States Small Business Administration, hereinafter referred to as SBA. Between January 12, 1984 and June 13, 1984, Posey and Watkins entered into eleven transactions with Grenada Bank, accumulating a principal indebtedness of $144,000.00. Effective December 4, 1984, interest had accrued on the various loans in the sum of $13,473.49. On December 4, 1984, the principal amount of the eleven notes and the aforementioned accrued interest were consolidated into one note in the sum of $157,473.49, payable on March 4, 1985. This note was partially secured by a deed of trust encumbering the homestead property owned by Mr. and Mrs. Posey.

In May, 1984, Sandroni was admonished by his superior at Grenada Bank, Louis Vause, not to extend additional loans to Mr. Posey and Watkins. Yet, for reasons unknown to this Court, Sandroni permitted Posey and Watkins to sign five additional notes in the total principal sum of $55,-170.00, which were not placed in the bank's note portfolio. Sandroni testified that he held these notes in his desk and considered them to be personal loans from him to Mr. Posey and Watkins. However, Sandroni actually created fictitious loans in the names of his relatives and/or friends on the bank records. At the same time, he credited the bank account utilized by Posey and Watkins with funds corresponding to the amounts of the fictitious notes. These transactions which are absolutely in violation of banking regulations, as well as, state and federal law, are identified as follows:

| NOTE DATE | MATURITY DATE | AMOUNT |
|---|---|---|
| 5/24/84 | 11/24/84 | $ 5,000.00 |
| 6/15/84 | 9/15/84 | 9,100.00 |
| 6/21/84 | 11/17/84 | 8,000.00 |
| 8/27/84 | 11/27/84 | 10,000.00 |
| 1/11/85 | 5/01/85 | 23,070.00 |
| | Total | $55,170.00 |

Posey and Watkins were the obvious beneficiaries of Sandroni's conduct with the infusion of $55,170.00 into their business at the bank's expense.

As mentioned hereinabove, the original intention of Posey and Watkins was to obtain permanent financing, paying off the interim transactions with the bank, through SBA. An application for a direct loan from SBA in the sum of $115,000.00 was originally submitted to SBA on behalf of Posey and Watkins on February 17, 1984. This application was first rejected on April 2, 1984, but efforts were undertaken by the accountant employed by Posey and Watkins to overcome the rejection. SBA rejected the application a second time on August 20, 1984. During this time frame, Ralph Hall, a loan specialist with SBA, informed Sandroni that SBA's participation in a guaranteed loan from the bank to Posey and Watkins was highly unlikely. Regardless, on December 19, 1984, an application for a 90% SBA guaranteed loan in the amount of $362,473.49 was forwarded to SBA by Sandroni. The purpose of this loan was to construct a building in which to house the sporting goods store, to purchase inventory, as well as, to provide operating capital. This application was rejected by SBA on January 4, 1985, and Sandroni was informed accordingly.

The plaintiff has alleged that Sandroni fraudulently induced her to execute the deed of trust encumbering her home on December 4, 1984, through verbal statements that the deed of trust was to be utilized only in connection with the SBA guaranteed loan, and that if this loan was not approved, the deed of trust would be destroyed. The parties have stipulated that prior to December 4, 1984, the plaintiff was not personally liable to Grenada Bank for any debts incurred by her husband or her son with respect to the sporting goods business. As set forth hereinabove, the deed of trust executed by the plaintiff secured a business debt in the sum of $157,-463.49.

The deed of trust in favor of Grenada Bank was subordinate to a first deed of trust encumbering the plaintiff's homestead held by Mrs. Irene Sostes. The plaintiff and her husband had originally purchased their homestead from Mrs. Sostes and had executed a purchase money promissory note, dated July 10, 1984, evidencing a principal sum of $50,000.00, payable in amortized monthly installments of $550.55. The plaintiff and her husband defaulted under the terms of the Sostes promissory note effective September 16, 1985. Thereafter, the Sostes deed of trust, at the request and direction of Mrs. Sostes, was foreclosed on March 10, 1986, by D.C. Moore, Jr., Trustee. The property was purchased at the foreclosure sale for the sum of $53,489.48, but none of the proceeds were paid to Grenada Bank. The foreclosure of the Sostes deed of trust effectively eliminated the subordinate lien in favor of the defendant. Absent her bankruptcy filing, the plaintiff would be considered still indebted to Grenada Bank in the sum of $157,473.49, plus interest accrued pre-petition, as a result of the execution of the promissory note and deed of trust on December 4, 1984. The plaintiff and her husband filed their voluntary petition on April 4, 1985, listing the defendant, Grenada Bank, as a creditor.

On June 10, 1986, Glenn Sandroni pled guilty to twenty-one counts of embezzlement, misapplication, and conversion of approximately $142,108.86 of monies and funds belonging to and entrusted to the custody of Grenada Bank. As mentioned hereinabove, a large portion of the funds embezzled and misapplied by Sandroni were utilized to fund the loans made to Mr. Posey and Daniel Watkins.

## III.

### DISCUSSION OF LEGAL ISSUES

The defendant has moved the Court to grant partial summary judgment as to Count II of the plaintiff's amended complaint which asserts that the defendant should be found civilly liable for violating the "Racketeer Influenced and Corrupt Organizations" provisions of Title IX of the Organized Crime Control Act of 1970, Pub. L. No. 91–452, 84 Stat. 941 (18 U.S.C. §§ 1961–1968.), hereinafter referred to as RICO. Since the plaintiff's amended complaint has eliminated allegations concerning the defendant's alleged violation of the Mississippi "Racketeer Influenced and Corrupt Organizations Act", (Miss.Code Ann. § 97–43–11 § 97–43–11 (1972)) this discussion will focus in inverse order on § 1962(a) and § 1962(c) of the Federal RICO Act.

(Future reference to § 1962(c) or § 1962(a) in this opinion shall be considered as 18 U.S.C. § 1962(c) or 18 U.S.C. § 1962(a), unless specifically noted otherwise.)

## IV.

18 U.S.C. § 1962(c) provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of unlawful debt.

The constituent elements of this section are broken out as follows:

(1) a person,

(2) employed by or associated with an enterprise,

(3) the activities of which affect interstate or foreign commerce,

(4) the person conducts or participates, directly or indirectly, in the conduct of the enterprise's affairs

(5) through a pattern of racketeering activity or collection of unlawful debt.

The plaintiff's complaint basically alleges that the defendant is both the RICO person and the RICO enterprise.

"Person" and "enterprise" are defined in 18 U.S.C. § 1961 at (3) and (4) respectively: " 'person' includes any individual or entity capable of holding a legal or beneficial interest in property"; " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

In a majority of circuits "person" and "enterprise" must be distinct in order to state a claim under § 1962(c). *See, U.S. v. Computer Sciences Corp.,* 689 F.2d 1181 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Rae v. Union Bank,* 725 F.2d 478 (9th Cir.1984); *Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982), *aff'd in part and rev'd in part,* 710 F.2d 1361 (8th Cir.1983), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Hirsch v. Enright Refining Co.,* 751 F.2d 628 (3rd Cir.1984); *Bennett v. United States Trust Co. of New York,* 770 F.2d 308 (2nd Cir.1985) *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Only the Eleventh Circuit has adopted a contrary rule. *See, United States v. Hartley,* 678 F.2d 961 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983).

In *Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349 (3rd Cir. 1987), the Court discussed several of the cases cited in the paragraph immediately preceding, particularly *Hirsch v. Enright Refining Co.,* supra. The following comment is informative:

We explained in *Enright* that § 1962(c) was drafted in such a way that Congress must have intended the "person and the "enterprise" to be distinct entities under that provision. Under the language of that provision, we held,

the person must be employed by or associated with an "enterprise." The Enright Refining Company, Inc. clearly is not employed by the Enright Refining Company, Inc.; nor is it logical to say that the Enright Refining Company, Inc. is associated with the Enright Refining Company, Inc. Thus the language contemplates that the "person" must be associated with a separate "enterprise" before there can be RICO liability on the part of the "person".

*Petro–Tech, Inc.,* 824 F.2d at 1359 (citing *Hirsch v. Enright,* 751 F.2d at 633).

In *Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122 (5th Cir.1986), the Fifth Circuit adopted the majority view when it affirmed the trial court's dismissal of a RICO claim because "the plaintiff alleged that the RICO 'person' and the RICO 'enterprise' were one and the same ..." *Id.* The facts in *Bishop* concerned a dispute over repairs to a fishing boat. Nevertheless, the structure of the complaint makes the case analogous.

The facts of *Bishop* are distinguishable in one important way. In *Bishop,* the RICO person and enterprise were alleged to be the same "sole" defendant. This situation is fatal to the RICO claim as supported by the great weight of case law previously cited. However, in the instant case, the RICO person is alleged to be Grenada Bank while the RICO enterprise is alleged to consist of Grenada Bank *and* its employee Glenn Sandroni. This raises the issue of whether the separation requirement of *Bishop* can be circumvented by the mere addition of a second party to the enterprise thereby making it no longer one and the same as the named person.

The Fifth Circuit has squarely addressed this issue in a recent decision. In *Atkinson v. Anadarko Bank and Trust Co.,* 808 F.2d 438 (5th Cir.) *cert. denied,* —— U.S.

——, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987), the Court affirmed the issuance of a judgment notwithstanding the verdict which left intact a jury finding of common law fraud and breach of contract, but ignored the jury finding of a RICO violation. *Atkinson* involved a lawsuit against a bank which charged higher than the contractually agreed upon interest rate. The original complaint alleged a civil RICO violation, as well as, common law fraud and breach of contract, all as a result of the interest overcharge. However, the complaint defectively alleged that the culpable person, Anadarko Bank, was also the enterprise. The trial court noted the error and permitted the plaintiff to amend the complaint.

The amended complaint again identified the culpable person as being Anadarko Bank, but identified the enterprise as being an "association in fact" consisting of the bank, its holding company, and three bank employees. Before addressing the trial court's reaction to the amended complaint, the *Atkinson* court cited several appropriate authorities: "The existence of an enterprise is an essential element of a RICO claim." *Sedima v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); "To establish an 'association in fact' enterprise ... plaintiffs must show evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); "The enterprise must be 'an entity separate and apart from the pattern of activity in which it engages.'" *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2529. The court in *Atkinson* then stated the following:

> The record here contains no evidence that the bank, its holding company, and the three employees were associated in any manner apart from the activities of the bank. Plaintiffs wholly failed to establish the existence of any entity separate and apart from the bank. In this case, the alleged racketeering activity forming the predicate of the RICO charge was mail fraud—the mailing of false statements requesting payment of interest in excess of the agreed amount.

> The mailing of loan statements was an activity of the bank. There is no evidence of any other activity on the part of the alleged enterprise.

*Atkinson*, 808 F.2d at 2037.

The language in the *Atkinson* decision creates a two part test for determining if the bank and its employees can constitute a RICO enterprise guilty of racketeering activity. First, there must be an "association in fact", formal or informal, between the parties. Second, the racketeering activities, forming the predicate of the RICO violation, must not be routine activities of the bank.

In applying this test to the instant case, it should be noted that plaintiff's complaint offers only vague allegations of an "association in fact". Quite to the contrary, the *undisputed* affidavits executed by Sandroni and Louis Vause reflect that Grenada Bank had no knowledge of Sandroni's activities until well after this lawsuit was filed. The bank reaped absolutely no benefit as a result of the plaintiff's execution of the deed of trust. The foreclosure of the first deed of trust by Mrs. Sostes, the proceeds of which were utilized to satisfy her indebtedness, the foreclosure costs, unpaid taxes, etc. negated any possible benefit for the bank. Without question, Grenada Bank was a victim of Sandroni's conduct to the "tune" of at least $142,108.86.

Furthermore, assuming arguendo that Sandroni and Grenada Bank were "associated in fact", the second part of the *Atkinson* test is not met because the racketeering activity alleged, i.e., mail and wire fraud in the issuance and servicing of loans, occurred through normal everyday activities of the bank.

The recent Fifth Circuit decision in *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423 (5th Cir.1987), is consistent with this result and cites the *Atkinson* rationale.

The *Petro-Tech* court thoroughly discussed § 1962(c) respondeat superior and aiding and abetting liability. These issues were summarized in the following comment:

We agree with Western that respondeat superior and aiding and abetting liability would disrupt the intended operation of § 1962(c), by making the § 1962(c) enterprise—the victim, as *Enright* tells us, of the racketeering activity—liable. Respondeat superior would have that effect because it renders the employer—i.e. the enterprise—responsible for the acts of the employees—i.e. the persons. Respondeat superior liability under § 1962(c) is therefore foreclosed by the rationale in *Enright* insofar as it would make the enterprise liable for the RICO violations which victimized it. See *Schofield v. First Commodity Corp.*, 793 F.2d 28, 32–33 (1st Cir.1986), which reaches the same conclusion we do here, in reliance on similar reasoning; see also *Luthi v. Tonka Corp.*, 815 F.2d 1229 (8th Cir.1987). Aiding and abetting would have the same effect when the aider and abettor is also the § 1962(c) enterprise. For this reason the dismissal of Counts XI and XII will be affirmed insofar as they purport to hold Western liable for the liabilities of other defendants under Count III.

*Petro–Tech, Inc.*, 824 F.2d at 1359.

As discussed in *Enright, Bishop, Atkinson,* and *Petro–Tech,* the plaintiff's approach to liability under § 1962(c) is simply impermissible.

Under § 1962(c), the person is the liable entity, not the enterprise. Considering the factual scenario before the Court, the logical § 1962(c) RICO person would be Glenn Sandroni. Grenada Bank can only be considered, at best, as a passive RICO enterprise. Under § 1962(c), liability would therefore not lie against Grenada Bank. Sandroni, of course, is not a party to this cause of action.

### V.

██ 18 U.S.C. § 1962(a) provides in relevant part as follows:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The constituent elements of § 1962(a) are broken out as follows:

(1) a person

(2) who has received any income derived, directly or indirectly, from a pattern of racketeering activity

(3) who uses, directly or indirectly, any part of such income, or the proceeds of such income

(4) in the acquisition of any interest in, the establishment, or operation of any enterprise

(5) which is engaged in, or the activities of which affect interstate or foreign commerce.

The Seventh Circuit has held in *Haroco, Inc. v. American National Bank and Trust Co.,* supra., that unlike § 1962(c) causes of action, the liable RICO person and the RICO enterprise do not have to be separate entities in causes of action brought under § 1962(a). The following language is instructive:

Subsection (a) does not contain any of the language in subsection (c) which suggest that the liable person and the enterprise must be separate. Under subsection (a) therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation—enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, *but not when it is merely the victim, prize, or passive instrument of racketeering.* This result is in accord with the primary purpose of RICO, which after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it. (emphasis added)

*Haroco,* 747 F.2d at 402.

As such, in the case before the Court, if Grenada Bank received any income derived,

directly or indirectly, from a pattern of racketeering activity and used such income in the establishment or operation of an enterprise, it may be liable under § 1962(a). The *Petro–Tech* opinion thoroughly discusses this issue and cites the *Haroco* decision with approval.

 It is undisputed that Grenada Bank lost substantial sums of money as a result of Sandroni's illegal conduct. It is also undisputed that the bank received no benefit whatsoever from the execution by the plaintiff of the deed of trust encumbering her homestead. The foreclosure of the Sostes deed of trust conclusively eliminated any benefit, direct or indirect, that Grenada Bank might have realized from its subordinate deed of trust. Succinctly stated, Grenada Bank was merely the victim or passive instrument of Sandroni's conduct, the majority of which did not affect the plaintiff at all. Consequently, unless the bank has received benefit and utilized such benefit in the operation of an enterprise, it cannot be held liable under § 1962(a).

### VI.

As a result of the above and foregoing reasons, this Court is of the opinion that the defendant's motion for partial summary judgment is well taken as to Count II set forth in the plaintiff's amended complaint. There are no material factual issues in dispute. As such, the plaintiff cannot sustain a cause of action under either 18 U.S.C. § 1962(a) or 18 U.S.C. § 1962(c). Since the motion for partial summary judgment can be resolved at this point, the Court declines to discuss the issue of whether a "pattern of racketeering activity" has been sufficiently alleged in the amended complaint.

It Is, Therefore, Ordered and Adjudged that the defendant's motion for partial summary judgment as to the RICO allegations appearing in Count II of the plaintiff's amended complaint is hereby sustained, and Count II of the amended complaint is hereby dismissed with prejudice.

This case shall proceed to trial on all issues raised in Count I of the amended complaint.