Mary E. **ELLIOTT** and M.E. Elliott, Inc., Plaintiffs–Appellants,

v.

Plato **FOUFAS**, Individually and d/b/a Plato Foufas & Co., et al., Defendants–Appellees.

No. 87–3653.

United States Court of Appeals, Fifth Circuit.

March 15, 1989.

---

Louis R. Koerner, Jr., New Orleans, La., for plaintiffs-appellants.

Brian P. Charbongau, and Paul J. Mirabile, Metairie, La., for Plato Foufas, Grodsky, Barrios, Middleberg & Riddle & First Federal Sav. Bank.

Roy Cheatwood, Thomas K. Potter, III, and Pauline F. Hardin, New Orleans, La., for Grodsky, Barrios & Middleberg & Riddle.

Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.

CLARK, Chief Judge:

Mary Elliott appeals the dismissal by the district court of her claims pursuant to Fed.R.Civ.P. 12(b)(6) and the accompanying dismissal of pendent state law claims for lack of jurisdiction. This action is bottomed in contract claims for real estate commissions cast as violations of the Racketeering Influenced and Corrupt Organizations Act (RICO). Because Elliott failed to plead necessary predicate acts, the existence of an enterprise, and other claims with the required specificity, we affirm.

*Facts*

Our review of this Rule 12(b)(6) dismissal accepts the facts as alleged in the complaint. According to the complaint, Mary Elliott contracted with 1020 Corporation to act as exclusive sales agent for the sale of condominium units located at 1020 Esplanade, New Orleans, Louisiana. The units were being renovated and were managed by 1020 Corporation, whose principal shareholder and director is Plato Foufas. Elliott was to be compensated for procuring sales of condominium units through commissions on the sales. Elliott maintains that a number of units were sold due to her efforts, but she was never paid a commission for those sales. She alleges that Foufas and others conspired to deprive her of those commissions and induced her to provide valuable sales and management services without compensation.

As stated in the complaint, Foufas and his associates implemented a scheme by which commissions owed to Elliott would instead be used to reduce the indebtedness of 1020 Corporation to First Federal Savings Bank. Elliott alleges that Foufas did this because he was also personally obligated on the loans. The scheme included Arthemise Barrios, who prepared closing statements and other closing agreements on the sales and executed escrow agreements on behalf of 1020 Corporation; Barry Grodsky, an attorney who represented Plato Foufas; Middleberg & Riddle, the law firm with which Grodsky is associated; and First Federal Savings Bank, which received payment on loans, allegedly from funds due Elliott.

According to Elliott, Foufas, with the aid of Barrios, diverted funds which represented her commissions into escrow accounts. These funds were then released to First Federal and applied against 1020's loans. When Elliott learned that she would not be paid, she filed a lien against 1020's property in an effort to recover her commissions. 1020 Corporation, represented by Grodsky, successfully opposed the action. Elliott maintains that Grodsky knew that her claims were valid, but continued to represent 1020 Corporation and Foufas to keep her from getting the money. As part of the scheme, Scardina, an employee of Foufas, falsely accused her of criminal wrongdoing in order to persuade her not to pursue her legal right to the commissions and to turn opinion against her.

In her original complaint, Elliott named as defendants Plato Foufas, individually and d/b/a Plato Foufas & Co. Foufas filed a Rule 12(e) motion for more definite statement. The district court granted the motion and ordered Elliott to conform her complaint to the requirements of an Eastern District Standing Order governing the pleading of a RICO claim. Elliott's amended complaint did not significantly clarify

the vague allegations of her original complaint. It did add peripheral defendants. All defendants then filed motions to dismiss the complaint for failure to state a claim on which relief could be granted. Elliott responded and also filed a motion to disqualify Middleberg & Riddle as counsel for Foufas since the firm itself was now a defendant. The court considered the motions of the defendants first and dismissed the case. Elliott's motion to disqualify counsel was dismissed as moot.

*Discussion*

### I. RICO Standing Order

██ Elliott argues that the RICO Standing Order requiring specific factual allegations violates Rules 8(a) and 83 of the Federal Rules of Civil Procedure. Specifically, Elliott maintains that by requiring a plaintiff to plead specific facts, the standing order conflicts with the notice pleading requirements of Rule 8(a). Also, she contends that the order is not a properly promulgated local rule under Rule 83 because it impinges on the requirements of other federal rules of civil procedure.

At the time of this litigation, the district's RICO Standing Order had not been adopted as a local rule. It was entered in this case as a ruling of the court in response to a Rule 12(e) Motion for More Definite Statement. The order was not intended as a punitive measure. It responded to defendants' request for a more definite statement by highlighting for Elliott the particular requirements for pleading a RICO claim and the areas in which her complaint was deficient. The order was entirely consistent with the requirements of Rule 8 that pleadings contain a plain statement of the claim and that pleadings be direct and concise. We further note that Elliott relies on alleged fraudulent conduct by the defendants as the basis for her RICO claim and that Fed.R.Civ.P. 9(b) requires fraud be pled with particularity. The district court did not abuse its discretion in entering the order.

### II. *Sufficiency of Pleadings*

The standard on review of a dismissal pursuant to Rule 12(b)(6) is the same as that in the trial court: it must appear to a certainty that the plaintiff can prove no set of facts in support of her claim. This is a rigorous standard, but subsumed within it is the requirement that the plaintiff state her case with enough clarity to enable a court or opposing party to determine whether or not a claim is alleged. This is what Elliott has not done.

In order to state a claim under 18 U.S.C. § 1962, a plaintiff must allege: 1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). This outline is deceptively simple, however, since each concept is a term of art which carries its own inherent requirements of particularity. For example, "conduct" embodies the requirements of one or more of the four substantive RICO violations set out in § 1962. Each contemplates a different relationship through which the defendant used racketeering activity to act upon or toward an enterprise. Accordingly, the elements required to state a claim vary according to the particular RICO claim asserted. The "enterprise" element requires that the plaintiff specify the enterprise and, in the case of an association-in-fact enterprise, plead the necessary organizational characteristics. "Racketeering activity" is defined by reference to various state and federal offenses, each of which subsumes additional constituent elements which the plaintiff must plead.

### A. Prohibited Activities

██ Elliott alleges, upon information and belief, violations of each subsection of § 1962. These allegations substantially rescript the language of the statute in conclusory form. Elliott failed to articulate how any particular defendant derived income from the alleged predicate acts, nor did she identify the enterprises in which income was invested. The only purported description of the acquisition or maintenance of an interest in an enterprise is by circumlocutory references such as "acts described hereinabove." The complaint does not demonstrate how an identified defendant acquired

control of a named enterprise by means of racketeering activity. In fact, the few enterprises named in the allegations do not correlate with the list of enterprises provided elsewhere in the complaint. Finally, the complaint does not treat each alleged violation of § 1962 as a separate RICO claim.

### B. Enterprise

In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise. *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423 (5th Cir.1987) (citing *United States v. Bledsoe*, 674 F.2d 647, 664–65 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982)). The enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir.1987). The defendant who commits the predicate offenses must also be distinct from the enterprise. *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122 (5th Cir. 1986). If the defendant is a legal entity, the plaintiffs must do more than merely establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business. *Old Time Enterprises, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir.1989). If the enterprise alleged is an "association in fact" enterprise, the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure. *Atkinson*, 808 F.2d at 440–41. The fact that officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation. *Id.* at 441.

Finally, the plaintiff must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts. *Montesano*, 818 F.2d at 427.

 Under the heading "Perpetrator Enterprises," Elliott's complaint listed the following:

a. 1020, insofar as all schemes and actions described herein;

b. Plato Foufas & Co., as an association of Foufas, Zheutlin, Scardina, and others;

c. An association of at least Foufas, Zheutlin, Barrios, and Grodsky;

d. Foufas, Middleberg & Riddle, Barrios, and First Federal;

e. La Renaissance Apartments.

These allegations are clearly insufficient. First, the allegations are merely conclusory. Second, Plato Foufas & Co. is named as both a defendant and an enterprise without any basis for the required separation of the liable "person" from the enterprise. Third, the complaint does not allege the additional organizational characteristics necessary for an "association in fact." Plaintiff has failed to assert continuity— that the association existed for any purpose other than to commit the predicate offenses. The mere fact that individuals might have joined together to defraud Elliott of her commissions is insufficient. Fourth, La Renaissance Apartments is in no way connected with any activity or defendant. An inanimate object such as an apartment cannot constitute a RICO enterprise.

### C. Racketeering Activity

 Elliott asserts that allegations of mail and wire fraud establish the requisite predicate acts. Throughout the amended complaint, various communications are alleged to violate mail and wire fraud statutes.[1]

---

**1.** Paragraph 38 of the complaint is illustrative:

38. In connection with or as a foreseeable consequence of the schemes referred to in ¶¶ 32–36 and in addition to the mailings itemized in the preceding paragraphs, from a post office or authorized depository for mail, Foufas took or received matter caused to be sent or delivered by the Postal Service, or know-

ingly caused to be delivered by mail according to the direction thereon, things or matters set forth hereinabove and otherwise, including but not limited to the following:

a. Memo from Mary Elliott to Plato Foufas, dated March 17, 1986;

Elliott does not identify the contents of any communications, nor does she explain how the communications advanced the alleged scheme of the defendants to defraud her. She does not suggest how the communications violated federal law. For example, alleged communications that related to Middleberg & Riddle and Barry Grodsky appear to be no more than routine business correspondence between attorney and client.

Elliott also alleges violations of 18 U.S.C. § 1951, the Hobbs Act, and 18 U.S.C. § 1952, the Interstate Travel in Aid of Racketeering Act. These acts prohibit the use of extortion or threats to obstruct interstate commerce, and travel in interstate commerce to commit "unlawful activity" such as extortion. For the purposes of these statutes, "extortion" means obtaining property from another, with his consent, induced by actual or threatened force, violence, or fear. Elliott admits in her complaint that no one "took" her commissions with her consent. On the contrary, she filed a separate action asserting a lien against 1020 Corporation's property based on the premise that the commissions were her property. The complaint states that Foufas threatened Elliott during a telephone conversation, but she does not specify the nature of the threat.

Elliott did not even come close to meeting the pleading requirements for stating a RICO claim. Even after the district court had entered its order, which explicitly demonstrated what was necessary to a valid complaint, Elliott's amended complaint asserted no more than a breach of contract to pay real estate commissions against 1020 Corporation. The district court was correct in determining that Elliott's complaint failed to state RICO, Hobbs, or Travel Act claims on which relief could be granted. Since the federal claims were properly dismissed before trial, the district court could, in its discretion, dismiss the pendent state law claims as well. *United Mine Workers*

*v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Joiner v. Diamond M. Drilling Co.*, 677 F.2d 1035 (5th Cir.1982).

## III. Procedural Issues

Elliott argues that the district court erred in dismissing her complaint before she had an opportunity to conduct discovery. Five months had passed between the filing of the original complaint and the dismissal of the claims. Elliott could have conducted discovery but did not. The district court did not base its ruling on unresolved factual issues and Elliott does not assert what facts she needed to seek. Elliott simply lacked any substantial basis to initiate her federal claims. The court did not err in refusing to grant a continuance to allow Elliott to conduct discovery.

Elliott also asserts that the district court should have made a more detailed analysis of the complaint in its memorandum opinion, so that she would have meaningful guidance by which to further amend her complaint. Findings of fact and conclusions of law are unnecessary to decisions of motions under Rule 12. Fed.R.Civ. P. 52(a). The district court opinion complies with the rules.

Finally, Elliott maintains that the district court erred in not allowing her to further amend her complaint. A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served. Fed.R.Civ.P. 15(a). A motion to dismiss for failure to state a claim is not a responsive pleading. *Barksdale v. King*, 699 F.2d 744 (5th Cir.1983). In Elliott's case, however, she has already amended her complaint once. Although that amendment was not voluntary, it was an amendment within the terms of Rule 15(a). She was on notice that defendants considered her complaint inadequate. Her amendment should have cured the deficiencies in her pleadings. Any further amend-

b. Memo from Mary Elliott to Plato Foufas and Michael Zheutlin, dated March 18, 1986;
c. Memo from Mary Elliott to Plato Foufas, dated March 25, 1986;

d. Letter of March 28, 1986 from Thomas R. Wechter to Plato Foufas;
e. Letters of July 17 and July 25, 1986 from Barry H. Grodsky to Ms. Mary Elliott with a copy to defendant.

ment, therefore, could only be by leave of the court.

In her response to the defendants' motion to dismiss, Elliott stated that she was "certainly willing to amend the complaint." This portion of Elliott's memo should have been construed as a motion for leave to amend her pleadings. *Vernell v. United States Postal Service*, 819 F.2d 108, 110 (5th Cir.1987). The district court has never ruled on this motion, but should consider whether a further amendment would be in the interests of justice. We intimate no view on how the district court should exercise its discretion in ruling on this motion.

*Conclusion*

The judgment of dismissal is affirmed. The cause is remanded to the district court for consideration of Elliott's motion to further amend the complaint.

AFFIRMED AND REMANDED.