**COMWEST, INC., a California corporation, Plaintiff,**

**v.**

**AMERICAN OPERATOR SERVICES, INC., dba National Telephone Services, Inc., a Delaware corporation; Ronald J. Haan, an individual; Gabriel A. Battista, an individual; Ken Schwartz, an individual; Evans Anderson, an individual; and Allen Breslau, an individual, Defendants.**

**No. SA CV 90–321 AHS (RWRx).**

United States District Court, C.D. California.

Feb. 21, 1991.

Barbara Brown, Rosen Wachtell & Gilbert, P.C., Michael A. Bertz, Los Angeles, Cal., for plaintiff.

Nicole A. Crittenden, Audrey L. Krasnow, Jackson Tufts Cole & Black, San Francisco, Cal., Bernard J. Casey, Joyce E. Mayers, Reed Smith Shaw & McClay, Washington, D.C., Karen J. Kubin, Michael G. Rhodes, Cooley Godward Castro Huddleson & Tatum, Newport Beach, Cal., for defendants.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND, FOURTH, FIFTH, SIXTH, AND SEVENTH CLAIMS FOR RELIEF

STOTLER, District Judge.

## I. FACTS AND PROCEDURAL HISTORY

The dispute in this case arose in the context of a judicially mandated presubscription of public pay telephones for long distance service. On October 14, 1988, the United States District Court for the District of Columbia ordered that all long distance carriers be given equal access to public pay telephones. *United States v. Western Electric Co., Inc.*, 698 F.Supp. 348 (D.D.C.1988). Pursuant to the order, the owners of the premises on which the pay telephones were located were entitled to select or "presubscribe" a long distance carrier.

On June 6, 1989,[1] plaintiff Comwest, Inc. and defendant National Telephone Services, Inc. ("NTS") entered into two independent sales contractor agreements whereby NTS retained Comwest to assist NTS in its effort to presubscribe premises owners to NTS long distance service. Under the Independent Contractor's Agreement, Comwest agreed to become an independent sales representative for NTS in presubscribing public pay telephones for NTS service. The contract provided that NTS would pay Comwest a commission for each operator-assisted long distance call made from phones subscribed under the agreement. Under the Master Contractor's Agreement, the parties reached a similar agreement with respect to the presubscription of hospitality phones. Both contracts were intended to endure for a one year period, subject to extension, or until terminated by one of the parties.

In December 1989, Comwest terminated its relationship as a sales representative of NTS after a number of disputes arose between the parties about the amount of commissions owing to Comwest under the two contracts. On April 24, 1990, Comwest initiated this action by filing its original complaint. On June 1, 1990, Comwest filed its First Amended Complaint. On July 5, 1990, the defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint. On August 13, 1990, the Court granted defendants' motion, providing plaintiff with 30 days leave to file an amended complaint.

---

**1.** Although the contracts were executed in June, the contracts were back dated to May 17 and May 18, 1989 to reflect the dates that Comwest began soliciting public pay phones and hospitality phones for NTS's operator-assisted services.

On September 24, 1990, plaintiff filed its Second Amended Complaint. Plaintiff's Second Amended Complaint alleges eight separate causes of action, including fraud and deceit, intentional interference with prospective economic advantage, breach of contract, and various RICO claims based on alleged predicates of wire and mail fraud. In support of these claims for relief, plaintiff alleges that NTS and its officers (i.e., the individual defendants) (1) fraudulently induced Comwest to enter the contracts without intending to pay the agreed commissions; (2) provided Comwest with false accountings for telephones subscribed by Comwest; (3) intentionally withheld commissions due to Comwest; and (4) interfered with Comwest's ability to obtain subscriptions.

On November 16, 1990, defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint. Defendants contend that plaintiff's First, Second, Fourth, Fifth, Sixth and Seventh Causes of Action must be dismissed for failure to state a claim pursuant to Rule 12(b)(6). On December 26, 1990, plaintiff filed Opposition. On January 4, 1991, defendants filed their Reply. The matter was set for hearing on the Court's January 14, 1991 calendar.

Having received, read and considered the foregoing, the Court determined that the matter was appropriate for submission on the papers without oral argument. *See* Local Rule 7.11 (the Court may dispense with oral argument on any matter unless otherwise required); Fed.R.Civ.P. 78. Accordingly, the Court removed the matter from the Court's January 14, 1991 calendar.

## II. DISCUSSION

Under Fed.R.Civ.P. 12(b)(6), a complaint should be dismissed for failure to state a cause of action only if, taking all allegations in the complaint as true, "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief" *Sun Savings and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). While this liberal pleading standard is often easy to satisfy, it

appears that plaintiff has failed to do so in this case. Hence, for the reasons stated below, the Court hereby grants defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, with prejudice, as to plaintiff's First, Second, Fourth, Fifth, Sixth, and Seventh Claims for Relief.

### A. First Claim: Fraud and Deceit

Defendants have moved to dismiss plaintiff's First Cause of Action under Rules 12(b)(6) and 9(b) of the Fed.R.Civ.P. for failure to state the circumstances constituting the alleged fraud with sufficient particularity. Specifically, defendants make three challenges to plaintiff's claim for fraud and deceit. First, defendants contend that plaintiff's allegations of fraud are all based upon "information and belief," which defendants contend is insufficient to meet Rule 9(b)'s strict pleading requirements. Second, defendants contend that plaintiff has failed to allege the reasons defendants' alleged misrepresentations are false or the circumstances from which fraud may be inferred. Third, defendants contest plaintiff's failure to connect any individual defendant with any alleged misrepresentation.

In opposition, plaintiff argues that it has satisfied Rule 9(b)'s requirements by identifying the time, date, place, and content of the alleged misrepresentations with sufficient specificity. Plaintiff contends that defendants' challenge to the First Claim proceeds from significant disregard of the factual detail alleged in the Second Amended Complaint. The Court disagrees.

■ Rule 9(b) requires the plaintiff to "state with particularity" the "circumstances constituting the fraud." The Ninth Circuit has interpreted this rule to require a statement of "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1400–01 (9th Cir.1986). However, *Schreiber* cannot be read as holding that mere recitation of the content of alleged misrepresentations and the context in which they were made is sufficient

to satisfy Rule 9(b). Rather, the requisite factual allegations established by the Ninth Circuit in *Schreiber* are required for a purpose. Given that allegations of fraud are particularly injurious to business and professional reputations, a fraud claim may withstand a Rule 9(b) challenge only if it states "the manner in which [the alleged misrepresentations] are false, and the facts that support an inference of fraud by each defendant." *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 639 (N.D.Cal.1980).

■ After reviewing the allegations of plaintiff's Second Amended Complaint, the Court concludes that plaintiff has again failed to comply with the specificity requirements of Rule 9(b). Plaintiff's fraud claim is fundamentally defective because all of plaintiff's fraud allegations are based "upon information and belief." (*See* Paragraph 1.) In Paragraphs 23, 26, 34, and 38, plaintiff alleges "upon knowledge" that certain NTS agents "stated" (as distinguished from "misrepresented") that NTS provided quality service, had a good business reputation, and was financially stable, etc. In Paragraphs 45 and 94 through 100, which are based entirely "upon information and belief," plaintiff alleges that these ostensibly neutral statements (innocuously denoted "representations" in Paragraph 39) were actually *mis*representations that "had no basis in fact."

Such allegations are simply insufficient to satisfy Rule 9(b)'s requirement that fraud claims be pleaded with specificity. It is well settled that fraud "[a]llegations based on 'information and belief' do not satisfy the particularity requirement of Rule 9(b) unless the complaint sets forth the facts on which the belief is founded." *In re Worlds of Wonder Securities Litigation*, 694 F.Supp. 1427, 1432–33 (N.D.Cal. 1988). Here, plaintiff's Second Amended Complaint is utterly devoid of any facts from which an inference of fraud could be drawn. For example, while plaintiff claims that defendants misrepresented the actual and projected rates of usage of, and revenues from, phones subscribed to NTS service, plaintiff has failed to allege the accurate revenues generated per phone or any

other facts that would show defendants' representations were in fact false when made. Similarly, although plaintiff claims that defendants promised that a commission would be paid for each phone call made from a phone subscribed by Comwest without any intent or ability to make such commission payments, plaintiff has failed to plead any facts that would suggest that NTS was unable or unwilling to perform as promised. Indeed, Paragraph 91 and 92 of the complaint, in which plaintiff alleges that NTS made some reconciliation payments to Comwest, tend to defeat any suggestion that NTS never intended to pay the commissions required under the parties' agreements.

■ Finally, with respect to the individual defendants, plaintiff's fraud claim is also deficient. Rule 9(b) requires identification of the "source of the fraud" and specification of the "role of *each* defendant in the fraud." *Hokama v. E.F. Hutton & Co., Inc.*, 566 F.Supp. 636, 645 (C.D.Cal.1983). In this case, however, plaintiff has made only conclusory allegations that "defendants . . ., and each of them, directly and indirectly, aiding and abetting each other, and acting in concert, and through each other and through Baker and Titolo, fraudulently induced plaintiff [to enter the sales contractor agreements]." *See* Sec.Amnd. Cmplt., Paragraph 94.

Such allegations are patently inadequate. "It is not enough for plaintiffs to make group allegations in such a situation because collective responsibility is not self-evident. Each defendant is entitled to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with." *In re Worlds of Wonder Securities Litigation*, 694 F.Supp. at 1433. In order to satisfy Rule 9(b), fraud claims "must allege the roles of defendants in sufficient detail to permit each to assess and answer the various claims of . . . liability asserted in the complaint." *Hokama*, 566 F.Supp. at 646. Hence, because plaintiff's First claim for relief fails to attribute any misrepresentation or act of fraud to any of the individual defendants, the defen-

dants cannot properly be held to answer plaintiff's fraud claims.

Accordingly, plaintiff's First Claim for Relief for fraud and deceit is dismissed, with prejudice, as to all defendants.

### B. Second Claim: Intentional Interference with Prospective Economic Advantage

■ Defendants contend that plaintiff's Second Cause of Action fails to state a claim because NTS is a party to the economic relationship with which NTS has allegedly interfered and upon which the alleged economic advantage is based. In opposition, NTS appears to concede that an action for intentional interference with contractual relations cannot lie against a party to the contract with which the party has allegedly interfered. *Dryden v. Tri-Valley Growers*, 65 Cal.App.3d 990, 998, 135 Cal.Rptr. 720 (1977). However, Comwest argues that defendant NTS is not a party to the prospective economic relationship that Comwest alleges has been interfered with. Indeed, Comwest contends that the economic relationship with which NTS has interfered is the prospective subscriptions to NTS long distance services "being solicited by Comwest with its prospective customers," the owners of premises on which public pay phones and hospitality phones were located.

Under California law, an action for intentional interference with prospective economic advantage cannot be maintained against a party to the relationship upon which the advantage is based. *Owens v. Foundation for Ocean Research*, 107 Cal. App.3d 179, 165 Cal.Rptr. 571 (1980) (dismissing tort claim brought by real estate broker against seller to recover sales commission); *Dryden*, 65 Cal.App.3d at 999, 135 Cal.Rptr. 720. In this case, the record before the Court shows without any ambiguity that defendant NTS "was a party to the contracts with the performance of which it allegedly interfered." *Id.*

■ Despite plaintiff's arguments to the contrary, the allegations of the Second Amended Complaint and the agreements referenced therein demonstrate that Com-

west's right to receive commissions was *not* an economic advantage arising from a contractual relationship between Comwest and the premises owners it solicited. First, the parties' agreements make clear that Comwest's right to commission payments is based entirely on Comwest's promise to serve as NTS's sales representative. Although the amount of commission payments necessarily depends on Comwest's success in soliciting customers for NTS services, the source of Comwest's entitlement is its contract with NTS. Thus, the facts in this case are entirely analogous to those in *Owens*, 107 Cal.App.3d 179, 165 Cal.Rptr. 571, which involved an ultimately unsuccessful action for tortious interference with contract brought by a real estate broker to recover sales commissions from a seller. Second, Paragraph 2 of the Independent Sales Contractor's Agreement makes clear that any economic relationship created by Comwest's efforts in soliciting subscriptions for NTS was between NTS and the solicited customers. Paragraph 2 clearly indicates that any resulting contractual relationship would be "between the Company (i.e., NTS) and any Prospective Customer." *See* Sec.Amend.Complt., Ex. A, at 62.

Accordingly, it appears that plaintiff's Second Claim must be dismissed as to NTS because Comwest is not entitled to relief on these facts under California law. Furthermore, since the parties' agreements make clear that Comwest's solicitation efforts were not intended to produce any economic relationship between Comwest and NTS's prospective customers, the Second Claim must also be dismissed as to the individual defendants; Comwest cannot state a claim for intentional interference with an alleged prospective economic relationship that could never have come into existence.

### C. Fourth, Fifth, Sixth, and Seventh Claims for Relief: Alleged RICO Violations

Plaintiff's Fourth, Fifth, Sixth, and Seventh Claims for Relief attempt to state claims under 18 U.S.C. § 1962(a), which prohibits the use of income derived from a pattern of racketeering activity in the oper-

ation of an enterprise, and 1962(c), which prohibits participation in the conduct of an enterprise through a pattern of racketeering activity, of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). However, plaintiff's third attempt to state a cause of action under RICO has again proven unsuccessful.

As discussed below, given that plaintiff's RICO claims are based on alleged predicate acts of mail and wire fraud upon which plaintiff's First Claim for Relief was based, the Court finds that the RICO claims must be dismissed because they fail to satisfy Rule 9(b)'s requirement that fraud allegations be plead with particularity. Furthermore, plaintiff's Fourth, Fifth, Sixth, and Seventh Claims for Relief are riddled with a myriad of other pleading deficiencies that compel dismissal of the claims on 12(b)(6) grounds for failure to state a claim.

In order to state a RICO claim for violation of 18 U.S.C. § 1962(c), a plaintiff must allege (1) the conduct, (2) of an "enterprise" affecting interstate commerce, (3) through a "pattern," (4) of "racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Miller v. Glen & Helen Aircraft, Inc.*, 777 F.2d 496, 498 (9th Cir. 1985). As to each of plaintiff's RICO claims, defendants contend that dismissal is appropriate under Rule 12(b)(6) because plaintiff fails to allege properly (1) an enterprise, (2) the predicate acts of mail and wire fraud, and (3) a pattern of racketeering activity. As to plaintiff's Fourth Claim alone, defendants contend that Comwest fails to state a claim because it fails to allege that it suffered an injury related to or caused by the investment or use of racketeering income. *See, e.g., In re Rexplore, Inc. Securities Litigation*, 685 F.Supp. 1132, 1142 (N.D.Cal.1988).

In opposition, plaintiff disputes each of defendants' contentions. However, while the Court declines to accept the last of defendants' arguments, (*see In re National Mortgage Equity Corp. Mortgage Pool Certificates Securities Litigation*, 682 F.Supp. 1073, 1081 (C.D.Cal.1987), the Court nevertheless concludes that dismissal

of each RICO claim is appropriate because plaintiff has failed to allege the following elements adequately: (1) an "enterprise" (except as to plaintiff's Fifth Claim); (2) the predicate acts of mail and wire fraud, and (3) a "pattern of racketeering activity."

### 1. Pleading the Elusive RICO "Enterprise":

In its Fifth, Sixth, and Seventh Claims for Relief, plaintiff alleges violation of 18 U.S.C. § 1962(c), which prohibits persons from conducting or participating in the affairs of an enterprise through a pattern of racketeering activity. Comwest variously alleges the "enterprise" to be NTS (Fifth Claim), Comwest (Sixth Claim), and an "association-in-fact" enterprise among NTS and its independent sales representatives (Seventh Claim). Defendants contend that each of plaintiff's attempts to allege an "enterprise" is insufficient. Hence, defendants contend that plaintiff's Fifth, Sixth, and Seventh Claims for Relief must be dismissed pursuant to 12(b)(6) for failure to plead a RICO "enterprise" properly.

In opposition, plaintiff argues that its Fifth, Sixth, and Seventh Claims for Relief properly allege a RICO "enterprise" under 18 U.S.C. § 1962(c). For the reasons discussed below, however, the Court determines that plaintiff has plead a proper RICO "enterprise" with respect to its Fifth Claim for Relief alone. For the sake of clarity, the following discussion will consider each claim's alleged "enterprise" separately.

■ "The courts have consistently held that in an action under § 1962(c), [which provides that it is 'unlawful for any person ... associated with any enterprise ... to conduct ... such enterprise's affairs through a pattern of racketeering activity'], the 'person' must be separate and distinct from the 'enterprise.'" *Schreiber*, 806 F.2d at 1397 (noting that contrary rule applies to claims brought under § 1962(a)); *Rae v. Union Bank*, 725 F.2d 478 (9th Cir.1984). The reasoning is that under the language of the statute, if the "person" were not distinct from the "enterprise," the person could not "conduct the affairs of"

or "associate with" the enterprise as required by a plain reading of § 1962(c)'s language. "Moreover, on a policy level, without this requirement a deep pocket corporation which fits the definition of both an 'enterprise' and a 'person' could be held liable under subsection (c) even though it is merely the passive instrument for the wrongdoing of others." *Raymark Industries, Inc. v. Stemple*, 714 F.Supp. 460, 472 (D.Kan.1988).

■ *a. Fifth Claim's "Enterprise" Allegations:* In plaintiff's Fifth Claim for Relief, plaintiff has alleged that defendants Ronald J. Haan and Gabriel A. Battista (the "persons") devised a scheme to defraud Comwest by conducting the affairs of the "enterprise" NTS through a pattern of racketeering activity. However, defendants contend that plaintiff's Fifth Claim for Relief must be dismissed because "NTS cannot be the enterprise through which its officers act." In support of their argument, defendants rely on *Data Controls North, Inc. v. Financial Corp. of America, Inc.*, 688 F.Supp. 1047, 1052 (D.Md. 1988), *affirmed* 875 F.2d 314 (4th Cir.1989), which held that "[i]ndividual directors and officers of a company cannot be 'persons' while the company is deemed the 'enterprise' for purposes of establishing the requisite elements of a RICO charge." *See also Entre Computer Centers, Inc. v. FMG of Kansas City, Inc.*, 819 F.2d 1279, 1287 (4th Cir.1987), *overruled on other grounds*, 896 F.2d 833, 841 (4th Cir.1990).

Having reviewed the allegations of plaintiff's Fifth Claim for Relief and the relevant law, the Court declines to follow *Data Controls* and *Entre Computers*. Both cases appear to be based on an unsupported expansion of the Fourth Circuit's ruling in *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982), *cert. denied* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), which held that a corporation could not be deemed the "enterprise" where the "person"/defendant was merely a subsidiary of the corporation. For example, although the *Entre Computers* court appeared to hold that a corporation could not be a RICO enterprise where

its directors and officers were the "persons" conducting the affairs of the enterprise, it reached this conclusion by summarily dismissing, without explanation, allegations similar to the "enterprise" allegations in Comwest's Fifth Claim for Relief. *See Entre Computers*, 819 F.2d at 1287.

The reasoning of *Data Controls* is no more persuasive. The *Data Controls* court rejected a RICO claim where corporate officers and directors were alleged to be "persons" who conducted the affairs of the corporation/"enterprise" because in such a case "the 'person' and the 'enterprise' are actually one and the same." Presumably, the court reasoned that the individual defendants could not be considered distinct from the corporate "enterprise" because a corporation can only act through its directors and officers. However, such reasoning presents several difficulties.

First, the holding in *Data Controls* substantially limits the broad reach of RICO's provisions intended by Congress. When Congress enacted RICO, its primary concern was the infiltration of organized crime into legitimate businesses. *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 397 (7th Cir.1984). As such, Congress intended to provide for criminal and civil liability for those "persons" who, for example, gained control of legitimate corporate "enterprises" by means of forced or fraudulent acquisition of corporate shares. *Id.* However, application of the *Data Controls'* rule would hinder successful prosecution of civil and criminal RICO claims against defendant "persons" who became the officers, directors, or sole-shareholders of the victimized corporate "enterprise" because the corporation could not be plead as the RICO "enterprise."

Second, the apparent rationale of the *Data Controls* court is simply not reflective of reality. While it is certainly true that a corporation cannot act except through its officers, there are nonetheless significant formal and practical distinctions that make corporations separable from the individual officers that control them. *See, e.g., United States v. Benny*, 786 F.2d

1410, 1418 (9th Cir.1986). Formally, the corporation is a separate and independent legal entity distinct from its shareholders and officers. Practically, a corporate "enterprise" is an association of many, legally separable persons working within the organization. Hence, a corporation could properly be considered an "association-in-fact" enterprise consisting of various "persons." *Raymark Industries,* 714 F.Supp. at 474.

Accordingly, the Court rejects *Data Controls* and *Entre Computers* as applied to plaintiff's Fifth Claim; NTS, the corporation, may be the RICO "enterprise" through which the defendant/officers act. *Cf. Schreiber,* 806 F.2d at 1398 (holding that RICO counts against individual and corporate defendants were not insufficient for failing to allege a "person" separate and distinct from the "enterprise" even though the alleged "persons" were officers of the alleged corporate "enterprise"); *Blake v. Dierdorff,* 856 F.2d 1365 (9th Cir. 1988) (approving RICO claim brought under § 1962(c) against defendant directors of savings & loan that was deemed the "enterprise"). Indeed, many courts have gone so far as to hold that RICO claims under § 1962(c) are valid even when brought against a defendant whose sole proprietorship was the "enterprise" with which the defendant proprietor "associated." *Benny,* 786 F.2d at 1415; *McCullough v. Suter,* 757 F.2d 142, 143–44 (7th Cir.1985); *see also Wilcox v. Ho–Wing Sit,* 586 F.Supp. 561, 569 (N.D.Cal.1984) (Schwarzer, J.) (partnership was proper RICO "enterprise" where partners were defendants because there was no identity between the enterprise and the defendants).

Given the foregoing, the Court concludes that NTS is a proper "enterprise" because it is "different from, not the same as, or part of, the persons whose behavior the Act was designed to prohibit" (i.e., Haan and Battista). *Wilcox v. First Interstate Bank of Oregon, N.A.,* 815 F.2d 522, 529 (9th Cir.1987). Accordingly, plaintiff's Fifth Claim for Relief cannot properly be dismissed for failure to plead a proper RICO "enterprise."

■ *b. Sixth Claim's "Enterprise" Allegations:* In the Sixth Claim for Relief, Comwest alleges that defendants NTS, Haan, and Battista "participated in the conduct of the affairs of Comwest [(the "enterprise")] through a pattern of racketeering activity." However, defendants contend that Comwest cannot serve as an "enterprise" for purposes of plaintiff's Sixth Claim for Relief. Defendants argue that the Sixth Claim for Relief does not adequately allege sufficient facts to establish that the defendants conducted or participated in the affairs of Comwest through a pattern of racketeering activity.

In opposition, plaintiff contends that it has alleged facts demonstrating that the defendants actively "participated in the conduct of all aspects of the affairs of plaintiff." However, the Court disagrees. "In order to avoid dismissal for failure to state a claim, a [RICO] plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989).

In this case, plaintiff's Sixth Claim for Relief merely states that defendants effectively controlled Comwest's business operations by assisting in the accounting of commission payments and by withholding funds due to plaintiff. The terms "conduct" and "participate" in § 1962(c) are quite broad, but plaintiff's Sixth Claim for Relief falls well outside any reasonable interpretation of § 1962(c)'s language. Plaintiff's reliance on substantial commission payments does not suggest that NTS or its officers had any actual control over Comwest's course of action. Furthermore, plaintiff fails to allege that NTS or its officers had any decision-making authority over the affairs of Comwest. Apparently, defendants hold no ownership interest in Comwest, are not members of Comwest's board of directors, and did not serve as officers of Comwest in any capacity. Moreover, the parties' agreements do not suggest that the parties contemplated any relationship beyond an arms-length business transaction between two independent corporate entities.

■ *c. Seventh Claim's "Enterprise" Allegations:* The "enterprise" alleged in plaintiff's Seventh Claim for Relief is no more sound. Plaintiff alleges that defendant NTS and its independent sales representatives constituted an "association-in-fact" enterprise through which NTS engaged in its alleged racketeering activity. As defendants argue, however, plaintiff's enterprise allegations are inadequate.

"If the enterprise alleged is an 'association-in-fact' enterprise, the plaintiff must show some evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Elliott,* 867 F.2d at 881; *Manax v. McNamara,* 842 F.2d 808, 811 (5th Cir.1988). Furthermore, as noted above, plaintiffs alleging RICO claims must plead specific facts in order to establish the existence of an "enterprise." *Elliott,* 867 F.2d at 881.

Plaintiff's Seventh Claim for Relief alleges only that NTS employed a number of independent sales representatives to solicit customers to subscribe to NTS long-distance service and accounted for the services of those sales representatives. *See* Sec. Amnd.Cmplt., Paragraph 148. Noticeably absent from the allegations of plaintiff's Seventh Claim, however, is any suggestion of "an ongoing organization[al structure]." Plaintiff does not allege the existence of any centralized decision-making authority or common personnel. There are no allegations from which the Court could infer the existence of common financial interests or connections. As such, the Seventh Claim's "association-in-fact" enterprise is deficient. *Cf. United States v. Feldman,* 853 F.2d 648, 658–59 (9th Cir.1988) (discussing similar factors that it considered significant), *cert. denied,* 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989).

Moreover, given that the presubscription solicitation effort was a short-lived, self-terminating event, plaintiff has failed to allege that NTS's "association" with its sales representatives was an "ongoing organization" or "continuing unit." Thus, as with plaintiff's Sixth Claim for Relief, plaintiff's Seventh Claim fails to state a claim upon which relief can be granted.

*2. The Defective Predicate Acts:*

■ In this case, all of plaintiff's RICO claims are based on predicate acts of mail and wire fraud. To allege a violation of the mail and wire fraud statutes, a plaintiff must show (1) a scheme to defraud, (2) use of either the U.S. mails or interstate wires in furtherance of the fraud, and (3) specific intent to defraud. *Sun Savings & Loan Association v. Dierdorff,* 825 F.2d 187, 195 (9th Cir.1987).

■ Under Ninth Circuit law, RICO claims based on predicate acts of mail and wire fraud must be dismissed where the alleged predicate acts fail to state a claim for violation of the mail and wire fraud statutes. *See Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988) (dismissing RICO claims because predicate acts of mail and wire fraud were not plead with specificity required by Rule 9(b)). In this regard, it is significant that fraud-based RICO claims may be dismissed if they fail to satisfy Rule 9(b)'s requirement that fraud claims be plead with particularity. *See e.g., Alan Neuman Productions,* 862 F.2d at 1392. Hence, to withstand defendants' second challenge to plaintiff's RICO claims, plaintiff was obligated to plead the time, date, place, and content of the alleged misrepresentations with sufficient specificity so that an inference of fraud could have been drawn by the Court. Plaintiff has failed to do so.

Plaintiff's RICO claims are based on the same factual allegations of fraud that the Court has found inadequate to support plaintiff's First Claim for Relief. Furthermore, the allegations that make up plaintiff's Fourth, Fifth, Sixth, and Seventh Claims for Relief do not cure the deficiencies noted by the Court in Part II(B) *supra.* Plaintiff's reiteration of its fraud allegations in its RICO claims comes no closer to meeting the standard of particularity required by Rule 9(b) than did the allegations supporting plaintiff's First Claim. As such, Comwest has failed to allege, with sufficient specificity, a scheme to defraud

as required by the mail and wire fraud statutes. Without these predicate acts of racketeering activity, plaintiff can state no claim under RICO. For this reason alone, Comwest's Fourth, Fifth, Sixth, and Seventh Claims for Relief must be dismissed.

Strictly speaking, it is unnecessary for the Court to consider the other deficiencies in Comwest's pleading of its RICO claims. However, given that the parties devoted so much attention to the adequacy of plaintiff's pleading of a "pattern of racketeering activity," the Court will briefly consider the shortfalls of plaintiff's pleading of that element.

### 3. The Absence of a "Pattern":

 Comwest is not successful in establishing that NTS engaged in a "continuing *pattern* of racketeering activity" as required to state a claim under both 18 U.S.C. § 1962(a) and 1962(c) of RICO. Plaintiff's Second Amended Complaint alleges that defendants' repeated acts of mail and wire fraud "had continuity," as demonstrated by defendants' "repetitive and continuous false statements. ... and other fraudulent conduct" and "the fact that NTS has engaged in parallel conduct with its other sales representatives." *See* Sec.Amd. Cmplt., Paragraphs 125, 134, 144, 148. As the defendants contend, however, such allegations are insufficient to allege a "pattern" of racketeering activity.

Under *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989), the term "pattern," as used in RICO, requires a showing that (1) the "predicate acts are related, and (2) that such activity amounts to or poses a threat of continued criminal activity." The Court explained that "continuity" refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with the threat of repetition." 492 U.S. at 229, 109 S.Ct. at 2902, 106 L.Ed.2d 195.

In this case, even if plaintiff had properly alleged the requisite predicate acts of mail and wire fraud, plaintiff's RICO claims would still fail to state a claim because plaintiff fails to suggest any facts from which this Court might infer that NTS's alleged conduct posed a continuing threat of racketeering activity. Plaintiff merely tracks the language of the statute by alleging "continuity" and then asserts, without any apparent factual support, that NTS has "engaged in parallel [fraudulent] conduct with its other sales representatives." In addition, the allegations of the Second Amended Complaint indicate that the presubscription effort that gave rise to defendants' alleged fraud was short-lived and posed no threat of continuing criminal activity. Indeed, as defendants' note, the parties' contracts were each limited by their terms to a period of one year,[2] and Comwest terminated them after little more than six (6) months. Moreover, given that both agreements gave "either party" the power to terminate the agreements "at any time," the Court cannot conclude that NTS's conduct posed a threat of continuing criminal conduct "at [any] point during the [alleged] racketeering activity." *Sun Savings & Loan*, 825 F.2d at 194 n. 5. If the "continuity" requirement is to have any force at all, it cannot encompass alleged racketeering activity that can be so easily and permanently truncated at the will of another.

Accordingly, plaintiff's failure to plead a continuing "pattern of racketeering activity" justifies dismissal of plaintiff's Fourth, Fifth, Sixth, and Seventh Claims for Relief for failure to state a claim.

### III. CONCLUSION

The Court grants defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, with prejudice, as to plaintiff's First, Second, Fourth, Fifth, Sixth, and Seventh Claims for Relief. While leave to amend is granted liberally as a general rule, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), "a district court has broad discretion ... to deny leave to

---

**2.** The Sales Contractor's Agreement relating to subscription of public pay telephones provided that commissions were payable for up to five years, but plaintiff's ability to subscribe further customers to NTS' long-distance service was limited to a one year period.

amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint." *Mir v. Fosburg,* 646 F.2d 342, 347 (9th Cir.1980); *Hayduk v. Lanna,* 775 F.2d 441, 445 (1st Cir.1985) (denial of leave to amend proper where plaintiff is notified before amending a second time that the complaint's fraud allegations are insufficient). Thus, since Comwest has failed to cure the pleading deficiencies that led to dismissal of Comwest's First Amended Complaint, the Court concludes that the challenged claims should be dismissed without leave to amend.

Defendant NTS is directed to answer plaintiff's remaining claims for relief within ten (10) days.

IT IS SO ORDERED.