UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 7, 2008

Charles R. Fulbruge III
Clerk

No. 06-20488

In The Matter Of: MICHAEL ANDREW McCANN

                                                            Debtor

--------------------------------------------------------------------------------------

HUNTINGTON NATIONAL BANK,

                                            Appellee-Cross Appellant,

v.

MICHAEL ANDREW McCANN,

                                            Appellant-Cross Appellee.

Appeal from the United States District Court
for the Southern District of Texas,
Houston Division.
USDC No. 4:06-cv-872

Before JOLLY, HIGGINBOTHAM, and ELROD, Circuit Judges.

PER CURIAM:[*]

Appellant Michael McCann deposited numerous altered and counterfeit checks into accounts serviced by Appellee Huntington National Bank. He appeals the district court's judgment following a trial in the bankruptcy court

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Rule 47.5.4.

declaring him liable to Huntington under Michigan law for breach of transfer and endorsement warranties. He also appeals the bankruptcy court's finding that his liability to Huntington constitutes debt that is non-dischargeable in bankruptcy. Huntington cross-appeals the district court's rejection of its racketeering claim. We affirm.

## I. Factual and Procedural History

Appellant McCann is a Texas dentist. From 2001 through 2002, McCann, through his Michigan connection Kenneth Vandenberg, deposited numerous checks into a Michigan account serviced by Huntington. These checks were subsequently returned to Huntington from the respective drawee banks as forged or altered. As the bankruptcy court would later determine, McCann somehow obtained checks payable to various third parties, added his name to the checks as an alternative payee, then sent them to Vandenberg in Michigan for deposit. McCann sent for deposit other checks that were not only altered but wholly counterfeit. McCann was able to withdraw significant funds from the Huntington account before the bank discovered the fraud.

Huntington initially filed suit in the U.S. District Court for the Western District of Michigan, claiming damages of almost $300,000. However, on June 25, 2004, McCann filed for bankruptcy in the Southern District of Texas, thereby triggering an automatic stay of Huntington's Michigan suit under 11 U.S.C. § 362. Huntington filed a complaint in McCann's bankruptcy proceeding, claiming McCann was liable for breach of various warranties established by Michigan statutes governing the exchange of negotiable instruments. Huntington also claimed that it was entitled to treble damages due to McCann's violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), codified at 18 U.S.C. §§ 1961-1968.[1]

---

[1] Although violating RICO may also give rise to criminal liability, § 1964 creates a private right of action for those injured by another party's violation of

The bankruptcy court found that McCann incurred liability under Michigan law as a transferor and endorser of the altered checks. The court also found that:

> (1) McCann "knew that the checks . . . he endorsed were counterfeit, forged, or altered and that he was not an authorized payee of the checks;" (2) "McCann intended Huntington to rely" on McCann's false representations; (3) "Huntington did rely on those" representations; and (4) Huntington suffered damages as a result.

These findings, according to the bankruptcy court, triggered numerous provisions in the bankruptcy code each of which renders fraudulently incurred debt non-dischargeable.[2]

In its final order, the bankruptcy court: (1) awarded Huntington $252,867.55 in damages for McCann's breach of transfer and endorsement warranties; (2) awarded Huntington $81,550 in attorney's fees; and (3) declared these awards to be non-dischargeable debt. The bankruptcy court, on jurisdictional grounds, severed Huntington's RICO claim for district court review. Notwithstanding its decision to defer adjudication of Huntington's RICO claim the bankruptcy court issued Proposed Findings of Fact and Conclusions of Law in which it recommended to the district court a RICO judgment in Huntington's favor and an award of treble damages in the amount of $758,602.65. After withdrawing its reference of the case to bankruptcy court, the district court adopted the bankruptcy court's findings except for the proposed finding of McCann's liability under RICO.

---

§ 1962.

[2] In declaring McCann's debt to Huntington non-dischargeable, the bankruptcy court relied on 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6), each of which provides an independent basis for designating a specific debt non-dischargeable. Additionally, because McCann "fraudulently failed to schedule his assets" in the bankruptcy proceeding, the court, invoking 11 U.S.C. § 727(a)(4), denied discharge as to all of McCann's debt, including his debt to Huntington.

3

McCann, pro se, now argues that: (1) he is entitled to remand because the Western District of Michigan improperly exercised personal jurisdiction over him in Huntington's original suit; (2) the bankruptcy court's findings cannot withstand factual sufficiency review; (3) he was denied due process because the bankruptcy trustee refused to allow him access to records he claims were necessary for him to mount a meaningful defense; (4) the bankruptcy court erroneously denied his motion to suppress evidence obtained by Huntington through a subpoena; and (5) the bankruptcy court's award of attorney's fees is "excessive and improper." Huntington cross-appeals the district court's ruling that it failed to establish McCann's liability under RICO.

## II.

### A. Personal Jurisdiction

McCann first argues that the Western District of Michigan, where Huntington filed its initial suit, lacked personal jurisdiction over him. McCann asserts that the financial distress he suffered as a result of having to initially defend against Huntington's claims in Michigan caused him to file for bankruptcy in the Southern District of Texas. His theory is that the Texas proceedings never would have commenced were it not for the Michigan suit. Thus, McCann urges the Court to consider whether the Western District of Michigan's exercise of jurisdiction was proper, and, if it was not, conclude that such renders the entirely independent Texas proceedings unconstitutional.

It is difficult to fathom McCann's argument that the lower Texas courts lacked jurisdiction over his person, given that he was the party who initiated the Texas proceeding. In any event, McCann did not assert lack of personal jurisdiction in the courts below, nor does he claim to have raised personal jurisdiction issues in the Western District of Michigan. Parties "may not advance on appeal new theories or raise new issues not properly [raised] before the district court . . . ." Little v. Liquid Air Corp., 37 F.3d 1069, 1071 n.1 (5th Cir.

1994) (en banc). Even if McCann did have a plausible argument that the Western District of Michigan wrongfully exercised personal jurisdiction, he provides no support for the proposition that the tenuous causal relationship between the Michigan and Texas suits compromises the legitimacy of the latter. Thus, McCann has no valid personal jurisdiction argument.

B. McCann's Evidentiary Challenge

McCann next argues that the district court's judgment lacks a factual basis. He also asserts an affirmative defense not timely raised in the courts below: that Huntington was negligent in failing to obtain the endorsements of all payees listed on the checks before accepting them for deposit.

An appellate court reviews "the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." Nesco Acceptance Corp. v. Jay (In re Jay), 432 F.3d 323, 325 (5th Cir. 2005) (citing Carrieri v. Jobs.com Inc., 393 F.3d 508, 517 (5th Cir. 2004)). "A bankruptcy court's findings of fact are reviewed for clear error . . . ." Id. "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." In re Missionary Baptist Found. of Am., 712 F.2d 206, 209 (5th Cir. 1983) (internal quotation marks and citation omitted).

Michigan has adopted the Uniform Commercial Code for purposes of establishing the various warranties that arise in the transfer of negotiable instruments such as checks. See Starbrite Distrib. v. Excelda Mfg. Co., 454 Mich. 302, 306 n.2 (Mich. 1997). Michigan law provides that:

> [a] person who transfers an instrument for consideration warrants to the transferee and, if the transfer is by endorsement, to any subsequent transferee . . . (a) [t]hat the warrantor is a person entitled to enforce the instrument; (b) [t]hat all signatures on the instrument are authentic and authorized; [and] (c) [t]hat the

instrument has not been altered . . . . A person to whom the[se] warranties . . . are made and who took the instrument in good faith may recover from the warrantor as damages for breach . . . .

Mich. Comp. Laws § 440.3416(1)-(2) (LexisNexis 2008) (hereinafter MCL). The bankruptcy court found that McCann breached various warranties to Huntington that arose upon endorsement and deposit of the altered checks because (1) McCann endorsed and transferred the checks to Huntington; and (2) he did so for consideration. Because McCann has never disputed these two findings, he relies solely on his affirmative defense of negligence, an argument premised on Huntington's failure to obtain the endorsements of all payees listed on the checks, rather than just McCann's, before accepting them for deposit.

The bankruptcy court's factual findings, which amount to a prima facie case of McCann's liability, are supported by the record and therefore are not clearly erroneous. Further, McCann failed to raise his affirmative defense of Huntington's negligence at trial. It is therefore waived. See Little, 37 F.3d at 1071 n.1.

## C. Dischargeability

McCann appeals the bankruptcy court's finding that his debt to Huntington is non-dischargeable under the Bankruptcy Code. The bankruptcy court held that McCann's debt to Huntington was non-dischargeable for numerous reasons, one of which being that McCann incurred that debt through fraud. To that end, McCann devotes his entire dischargeability argument to attacking the bankruptcy court's conclusion that he committed fraud against Huntington, wholly failing to address an independent ground the bankruptcy court invoked for denying discharge of all of McCann's debt, including his debt to Huntington: fraud upon the court.

The bankruptcy court found that McCann "knowingly and fraudulently failed to schedule his assets and to disclose his income and other financial affairs" to the court. Such deception supports a denial of discharge under 11 U.S.C. § 727(a)(4). McCann fails to attack this finding on appeal. Accordingly,

because the bankruptcy court's order is supported by an independent ground not challenged on appeal, the Court need not consider McCann's argument attacking the bankruptcy court's order on a wholly separate basis. See LLEH, Inc. v. Wichita County, 289 F.3d 358, 364 (5th Cir. 2002) (noting that this Court may affirm a lower court judgment for any reason supported by the record); United States v. Thibodeaux, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

### D. Constitutional Claims

#### 1. Due Process

McCann next argues that he was denied due process when he allegedly was refused access by the bankruptcy trustee to various records he needed to mount a meaningful defense. During discovery, McCann housed many of his important documents in a rented storage unit, which came under the control of the trustee upon the commencement of bankruptcy proceedings. The trustee allegedly denied McCann access to those records.

Although he now proceeds pro se, McCann was represented by counsel during discovery in the bankruptcy proceeding. Neither McCann nor his attorney filed a discovery motion with the bankruptcy court or the district court seeking to compel access to the stored records. Indeed, McCann raised this "due process" argument for the first time in his motion to vacate the judgment of the bankruptcy court. Because there is no evidence to indicate that McCann was denied access to the records, and because McCann never alleged such obstruction when he had the opportunity to do so, the argument is not properly before the Court. See Little, 37 F.3d at 1071 n.1.

#### 2. Fourth Amendment

McCann next argues that the bankruptcy court erred in denying his motion to suppress. According to McCann, the government has been preparing a criminal case against him. Before trial, the Internal Revenue Service (IRS)

obtained a subpoena to search his records. McCann avers that the government sought a subpoena as a way of circumventing the probable cause requirement it must normally satisfy to justify a search in the criminal context. He further believes that Huntington was able to win at trial because the IRS "turned over" the records it obtained to Huntington for use in the latter's private suit. Under McCann's theory, the IRS's search without a warrant violated McCann's Fourth Amendment rights, and therefore Huntington's receipt of the documents obtained in that search constituted "fruit of the poisonous tree."

The record undermines McCann's argument. Huntington did not obtain the aforementioned records from the IRS. Rather, Huntington obtained its own subpoena for McCann's records, which gave it access thereto independent of the IRS search.

Not only does McCann argue a Fourth Amendment violation, he also claims a denial of due process by way of the IRS's alleged failure to notify McCann of its subpoena before searching his documents. The IRS is not a party to this suit. Therefore, any issues relating to the conduct of the IRS are not properly before this Court.

E. Attorney's Fees

McCann argues that the bankruptcy court's award of attorney's fees to Huntington in the amount of $81,550 is "excessive and improper" because Huntington has "deep pockets." He also argues that there was insufficient evidence to show that he engaged in fraud. The statute establishing endorsement and transfer warranties in the exchange of negotiable instruments, MCL § 440.3416(2), provides for the award of attorney's fees upon a finding of breach. Thus, even assuming insufficient evidence of fraud, McCann's argument fails because the bankruptcy court's award of attorney's fees was not predicated on its finding of fraud. Further, McCann cites no authority for his "deep pockets" argument. Accordingly, McCann provides no basis on which to conclude that the award was improper.

F. RICO

In addition to its successful breach of warranty claim, Huntington asserted a civil racketeering claim under RICO. The bankruptcy court severed Huntington's RICO claim for district court review but nevertheless issued Proposed Findings of Fact and Conclusions of Law recommending a RICO verdict in Huntington's favor. The district court rejected the bankruptcy court's proposal, and concluded that Huntington failed to establish liability under RICO. Huntington cross-appeals.

The district court did not indicate the basis for its ruling. The only asserted explanation for the ruling comes from Huntington, which states that, during a telephonic hearing the district court concluded that RICO liability was not established because Huntington failed to prove the existence of an "enterprise," a necessary element of a RICO claim. In response, Huntington devotes less than two pages of its brief to arguing that the bankruptcy court's findings of fact prove a RICO "enterprise." The Court disagrees.

Whether Huntington proved the existence of an "enterprise" sufficient to satisfy RICO is purely a question of law reviewed de novo. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000). RICO expressly declares unlawful three distinct types of schemes, each of which may give rise to civil liability. See 18 U.S.C. § 1962(a)-(c). Before the bankruptcy court, Huntington argued McCann's liability under paragraph (c), which provides that "[i]t shall be unlawful for any person . . . associated with any enterprise . . . the activities of which affect interstate . . . commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." "Reduced to its three essentials, a civil RICO claim must involve: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 242 (5th Cir. 1988).

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Thus, "[a] RICO 'enterprise' can be either a legal entity or an 'association in fact' enterprise." In re Burzynski, 989 F.2d 733, 743 (5th Cir. 1993).

The bankruptcy court found that Vandenberg deposited the checks into accounts serviced by Huntington at the direction of McCann. Huntington argues that, at the time of the fraudulent deposits, those accounts were already open for use by Vandenberg's "otherwise legitimate Michigan corporations." As such, Huntington asserted below that McCann, "Vandenberg and . . . Vandenberg's companies constitute[d] [the] 'enterprise'. . . in that they [were] a union or group of individuals and businesses associated in fact for the purpose of depositing the various checks . . . ." Thus, Huntington argues the existence not of a formal association, but of an "association-in-fact" under § 1961(4).

This Court has previously declined the invitation to expansively define an association-in-fact enterprise as merely a scheme involving two or more people. In re Burzynski, 989 F.2d at 743 ("An 'association-in-fact' enterprise perhaps could have been interpreted broadly to embrace any cooperative endeavor by two or more persons . . . . Mindful of the wisdom embodied in the federal structure of our nation, this circuit has eschewed this course."). Rather, to establish an "association-in-fact" . . . a plaintiff must show "evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981); Shaffer v. Williams, 794 F.2d 1030, 1032 (5th Cir. 1986). The enterprise must be "an entity separate and apart from the pattern of activity in which it engages," Turkette, 452 U.S. at 583, and the association must operate "through a hierarchical or consensual decision-making structure," Elliott v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989). Importantly, a plaintiff must also "establish that the association exists for purposes other than simply to commit the predicate

acts." Id. (citing Montesano v. Seafirst Commercial Corp., 818 F.2d 423, 427 (5th Cir. 1987)).

In recommending a RICO finding in favor of Huntington, the bankruptcy court did not discuss whether the scheme in which McCann engaged specifically satisfied the above requirements. Rather, the factual premise laid by the bankruptcy court in support of its recommended conclusion that McCann engaged in a RICO enterprise was its finding that "McCann, Vandenberg, and the various companies created by Vandenberg . . . [were] associated for the purpose of depositing the altered, counterfeit, or forged checks . . . ." Nothing in the bankruptcy court's opinion or recommendation to the district court suggests that the relationship between Vandenberg, McCann, and the Michigan corporations existed for purposes other than simply to commit the predicate acts and reap the resultant rewards. A RICO enterprise cannot be "a 'pattern of racketeering activity,' but must be 'an entity separate and apart from the pattern of activity in which it engages.'" Old Time Enters. v. Int'l Coffee Corp., 862 F.2d 1213, 1217 (5th Cir. 1989) (quoting Montesano, 818 F.2d at 427).

Nor does the record compel the conclusion that the relationship described by Huntington functioned as a "continuing unit over time through a hierarchical or consensual decision-making structure." See Elliott, 867 F.2d at 881. Rather, the evidence suggests that McCann and Vandenberg were merely partners in a scheme too unsophisticated to be labeled "organized crime," which RICO was designed to combat. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 165 (2001) (noting that RICO's goal is the "undermining [of] organized crime's influence upon legitimate businesses . . . .").

Because the record fails to demonstrate that McCann committed fraud as part of an "association-in-fact" under § 1961(4), Huntington cannot, based on the evidence in the record, prove an "enterprise" for purposes of RICO. Accordingly, the district court did not err.

AFFIRMED.