### The CADLE COMPANY, Plaintiff,

### v.

### F. Michael SCHULTZ, et al., Defendants.

### Civ. A. No. 3–91–0707–R.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 13, 1991.

---

Michael Lamar Jones, Randall K. Lindley, Caolo Meier & Jones, Dallas, Tex., F. Dean Armstrong, Law Offices of F. Dean Armstrong, Flossmoor, Ill., for Cadle Co.

David W. Evans, Law Office of David W. Evans, Dallas, Tex., for F. Michael Schultz, Linda Dee Dalquest Schultz and Szulc, Ltd.

Noel Hensley, William Alan Wright, Haynes & Boone, Dallas, Tex., for R. Leonard Weiner and Weiner, Strother & Blustein, P.C.

William Stephen Ellis, Brownwood, Tex., for Cent. Texas Women's Clinic, a Texas Professional Assoc., Paul L. Fragua, and Gary N. Butka.

Emil Lippe, Jr., Lippe & Associates, Dallas, Tex., for Larry Sands, Carson Byers, Dana Mackey, Steve Mackey.

Donald K. Buckman, Ernest Reynolds, III, Cantey & Hanger, Fort Worth, Tex., William W. Bell, Bell & Ellis, Brownwood, Tex., for Citizens Nat. Bank, at Brownwood.

Carson Byers, pro se.

Dana Mackey, pro se.

Steven Mackey, pro se.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, District Judge.

Plaintiff alleges causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO),[1] Texas Business and Commerce Code section 24.-005 (Vernon 1987) (fraudulent transfers), and tortious interference with Plaintiff's right to enforce a judgment against Defendant F. Michael Schultz (Schultz). Now before the Court are Defendants'[2] motions

---

1. 18 U.S.C. §§ 1961–1968 (1984 & Supp.1991).

2. Defendants F. Michael Schultz (Schultz) and Linda Dee Dalquest Schultz (Linda Schultz), individually and as Trustee of the Michele Diane Schultz Trust and the Stephen Lee Schultz Trust (the Trusts) have filed a Motion to Dismiss &

For More Definite Statement Under Rules 12(b)(1), (6), and 9(b). All other Defendants, with the exception of Defendant Larry Sands, have filed motions to dismiss adopting the arguments set forth in Schultz's and Linda Schultz's supporting memorandum.

to dismiss[3] and for more definite statement.[4] For the reasons that follow, the Court will DENY Defendants' motions.

## FACTS

Under the Federal Rules of Civil Procedure, a court may dismiss a complaint only if the plaintiff could not possibly prove any set of facts consistent with the allegations that would entitle the plaintiff to relief.[5] Furthermore, in reviewing a motion to dismiss, the court must accept the allegations of the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor.[6]

On December 21, 1984 Douglas L. Miller and Schultz signed a promissory note (the Note) in favor of Sunbelt National Bank in Dallas, Texas in the amount of $41,725.08. Miller and Schultz defaulted on the Note. After several fruitless attempts to obtain payment, Sunbelt National Bank filed suit against Miller and Schultz in County Court at Law No. 2, Dallas, Texas. On October 14, 1986, the county court issued an interlocutory default judgment against Schultz for the amount due under the Note ($41,-725.08) and attorneys' fees ($2,000.00). Schultz has refused to pay.

. Beginning in 1987, Schultz and his wife, in consultation with Defendant Weiner, have transferred many of Schultz's assets so that creditors cannot reach the assets. For example, Schultz and his wife partitioned their community property. Schultz and his wife formed a limited partnership, Szulc, Ltd., into which Schultz's salary ($276,000.00/year) is deposited. Schultz and his wife created trust funds for their children, into which Schultz has deposited some of his assets. Schultz has transferred many of his real estate holdings to various Defendants listed in this case in manners Plaintiff alleges are suspect.

On January 25, 1989 Plaintiff purchased from the Federal Deposit Insurance Corporation, as receiver for Sunbelt National Bank in Dallas, the Note and Sunbelt National Bank's claims against Schultz. Plaintiff and Schultz have had some phone conversations and exchanged some letters, including a letter Schultz mailed on March 25, 1989, in which he offered to assist Plaintiff in having the Note satisfied from Miller's assets. Plaintiff alleges that this letter and the other communications "lulled" Plaintiff into believing Schultz was working with them in good faith, while in actuality Schultz used the letter and other communications to gain time during which

---

3. Federal Rule of Civil Procedure 12(b) requires defendants to make 12(b)(1), (6) motions before pleading. Defendant Citizens National Bank of Brownwood (CNB) filed its answer on May 10, 1991, nearly one month before Schultz and Linda Schultz filed their motion to dismiss under Rule 12(b)(1), (6) on June 5, 1991. CNB filed its motion to dismiss, adopting the Schultz's motion on June 21, 1991. As CNB already had filed its pleading by the time it moved to dismiss on 12(b)(1) and (6) grounds, the Court must DENY CNB's motion to dismiss.

4. In their memorandum supporting the motion to dismiss and for more definite statement, Defendants object to venue in the Dallas Division, stating that "venue would be more convenient in the San Angelo Division." Local Rule 5.1, through incorporation of the Uniform Requirements on Motion Practice, requires a motion for change of venue to include a supporting brief, certificate of conference, and order. Defendants' objection does not comply with Local Rule 5.1; accordingly, the Court will not consider at this time a request for change of venue.

In addition, CNB filed its answer on May 10, 1991. In paragraph 3 of CNB's answer, CNB

admits that "venue is 'appropriate' in the Northern District of Texas, but would show that venue would be *more* appropriate in the San Angelo Division of this Court." Under Local Rule 5.1, this "objection" does not qualify as a motion for change of venue. Furthermore, under Federal Rule of Civil Procedure 12(b), defendants must file motions contending improper venue before pleading. As CNB has filed its responsive pleading without making a proper motion for change of venue, CNB has waived its objection to venue.

5. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1353 (5th Cir.1985).

6. *H.J., Inc.*, 492 U.S. at 249, 109 S.Ct. at 2905; *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964).

he could complete his fraudulent transfer of assets.

## ANALYSIS

### I. Relevant law

■ Plaintiff alleges Defendants committed fraud. Under Federal Rule of Civil Procedure 9(b), a complaint alleging a cause of action for fraud must state with particularity the circumstances constituting fraud.[7] Rule 9(b) must, however, be read in conjunction with Rule 8,[8] under which a complaint only need give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."[9] Moreover, if the information surrounding the allegations is peculiarly within the knowledge of the defendant, less detail is required in the complaint.[10]

### A. *Plaintiff's cause of action for RICO violations*

■ While a plaintiff must plead all of the numerous elements of a RICO violation, she may do so in accordance with the liberal notice pleading procedure of the Federal Rules of Civil Procedure.[11] Thus, "fair notice" is all a court can require of a plaintiff's complaint. To successfully plead the elements of a cause of action for a RICO violation, the plaintiff must allege (1) the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.[12] The United States Court of Appeals for the Fifth Circuit has recognized, however, that

[t]his outline is deceptively simple ... [because] each concept is a term of art

which carries its own inherent requirements of particularity. For example, "conduct" embodies the requirements of one or more of the four substantive violations set out in § 1962.[13]

The four substantive violations 18 U.S.C. section 1962 (1984 & Supp.1991) sets out are as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

---

**7.** Fed.R.Civ.P. 9(b) states:
In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

**8.** *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO,* 901 F.2d 404, 430 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1192 (5th Cir.1982), *cert. denied sub nom. Bintliff v. Chemetron Corp.,* 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 483 (1983); 2A J. Moore, *Federal Practice* ¶ 9.03[2], at 9–38 to 9–39 (2d ed. 1990).

**9.** *Conley,* 355 U.S. at 47, 78 S.Ct. at 102.

**10.** *Michaels Bldg. Co. v. Ameritrust Co.,* 848 F.2d 674, 680 (6th Cir.1988); *Temple v. Haft,* 73 F.R.D. 49, 53 (D.Del.1976).

**11.** *Howell Petroleum Co. v. Weaver,* 780 F.2d 1198, 1199 (5th Cir.1986).

**12.** *Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989) (citing *Sedima v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)).

**13.** *Id.*

racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.[14]

Each of these four violations "contemplate a different relationship through which the defendant used racketeering activity to act upon or toward an enterprise."[15] Plaintiff alleges that Defendants violated all four subsections of 18 U.S.C. section 1962.

### 1. Conduct/Prohibited Activities

■ To avoid dismissal for failure to state a claim, a plaintiff must articulate how each defendant acquired or maintained an interest in an enterprise, or acquired control of an enterprise, by means of a racketeering activity.[16]

### 2. Enterprise

■ RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[17] RICO thus allows for two types of associations to comprise an enterprise: an organization that constitutes a legal entity and less formal, nonlegal groups (an "association-in-fact enterprise").[18] To satisfy the "enterprise" element, a RICO plaintiff must specify the enterprise and, in the case of an association-in-fact enterprise, plead the necessary organizational characteristics.[19]

Plaintiff must plead specific facts indicating that the enterprise is " 'an entity separate and apart from the pattern of activity in which it engages.' "[20] Additionally, the defendant who commits the predicate racketeering offenses must be separate from the enterprise.[21] If the plaintiff alleges an association-in-fact enterprise, the plaintiff must allege facts indicating the existence of "an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure."[22] To satisfy the "continuing unit" requirement, "the plaintiff must plead specific facts establishing that the association exists for purposes other than simply to commit the predicate acts."[23]

■ Although RICO requires that the "person" be separate and distinct from the "enterprise,"[24] an association-in-fact enterprise can have as a member one of a number of RICO defendants.[25] An association-in-fact enterprise must have a sufficient nexus with interstate commerce, but the

---

**14.** 18 U.S.C. § 1962(a) (1984).

**15.** *Elliott,* 867 F.2d at 880.

**16.** *See Elliott,* 867 F.2d at 880–81 (discussing whether plaintiff in *Elliott* sufficiently pleaded facts evidencing prohibited activities).

**17.** 18 U.S.C. § 1961(4) (1984).

**18.** *United States v. Turkette,* 452 U.S. 576, 581–82, 101 S.Ct. 2524, 2527–28, 69 L.Ed.2d 246 (1981).

**19.** *Elliott,* 867 F.2d at 880.

**20.** *Id.* at 881 (quoting *Atkinson v. Anadarko Bank & Trust Co.,* 808 F.2d 438, 441 (5th Cir. 1987)); *see Landry,* 901 F.2d at 433 (listing three requirements for association-in-fact enterprise).

**21.** *Id.* (citing *Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122, 122 (5th Cir.1986)).

**22.** *Id.* (citing *Atkinson,* 808 F.2d at 440–41); *see Landry,* 901 F.2d at 433 (listing three require-

ments for association-in-fact enterprise) (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 243 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989)). The existence of an association-in-fact enterprise is a question of fact appropriate for determination by the jury. *Ocean Energy II v. Alexander & Alexander, Inc.,* 868 F.2d 740, 749 (5th Cir.1989); *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1353 (5th Cir.1985).

**23.** *Elliott,* 867 F.2d at 881 (citing *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423 at 427 (5th Cir.1987)).

**24.** *Haroco, Inc. v. American Nat'l Bank,* 747 F.2d 384, 401–02 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *see supra* text accompanying note 14 (containing text of 18 U.S.C. § 1962(c)).

**25.** *Cullen v. Margiotta,* 811 F.2d 698, 729–30 (2d Cir.), *cert. denied sub nom. Nassau County Republican Comm. v. Cullen,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).

nexus only need be minimal.[26] A plaintiff who alleges that the defendant used an instrumentality of interstate commerce, the United States postal service, to execute the defendant's fraudulent scheme sufficiently has alleged such a nexus.[27]

### 3. Pattern of Racketeering Activity

■ RICO defines "racketeering activity" by reference to various state and federal offenses, each of which subsumes additional constituent elements that the plaintiff must plead.[28] Violations of 18 U.S.C. sections 1341 (relating to mail fraud) and 1343 (relating to wire fraud) are among the "racketeering activities" (the predicate acts) RICO prohibits[29]—if the defendant has engaged in a *pattern* of such activities. Under RICO, a pattern of racketeering activity "requires at least two acts of racketeering activity" that occurred within ten years of each other.[30] Thus, to successful-ly allege that a defendant has engaged in a "pattern" of racketeering activities, and has thereby violated RICO, the plaintiff must allege that racketeering activities have been sufficiently continuous,[31] that they relate to each other,[32] and that they relate to the threat of continued criminal activity.[33]

■ Plaintiff in this case bases its RICO cause of action on the predicate acts of mail[34] and wire[35] fraud. The mail fraud statute proscribes two distinct crimes: first, acting pursuant to a scheme or artifice to defraud; and second, acting pursuant to a scheme or artifice for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises.[36] Plaintiff alleges that Defendants have committed the first type of mail fraud offense. In a civil RICO case, to prove a predicate act of mail

---

**26.** *R.A.G.S. Couture, Inc.,* 774 F.2d at 1353.

**27.** *Id.*

**28.** *Elliott,* 867 F.2d at 880.

**29.** 18 U.S.C. § 1961(1) (Supp.1991).

**30.** *Id.* § 1961(5) (1984).

**31.** The United States Supreme Court in *H.J., Inc.* stated that "continuity" embodies both closed- or open-ended conduct. *H.J., Inc.,* 492 U.S. at 241, 109 S.Ct. at 2901. In other words, a plaintiff can bring a RICO suit based on repeated conduct that occurred in a closed period of time or based on past conduct that by its nature carries a threat of repetition in the future. *Id.* If the plaintiff has based her RICO action on open-ended conduct, the question of whether the predicate acts establish a threat of continued racketeering activity depends on the specific facts of each case. *Id.* at 242, 109 S.Ct. at 2902.

**32.** The United States Court of Appeals for the Fifth Circuit has explained that "relationship" for purposes of RICO means that all predicate acts are aimed at a single goal. *Landry,* 901 F.2d at 433.

**33.** *H.J., Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900. In *H.J., Inc.,* the United States Supreme Court stated that "[c]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are related by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901 (quoting *Sedima v. Imrex Co.,* 473 U.S. 479,

496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985)).

**34.** The mail fraud statute, 18 U.S.C. § 1341, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representation, or promises, ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by te Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**35.** The wire fraud statute, 18 U.S.C. § 1343, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**36.** *Landry,* 901 F.2d at 428.

fraud[37] a plaintiff must show that:

(1) the defendant participated in some scheme or artifice to defraud;

(2) the defendant or someone associated with the scheme used the mails or "caused" the mails to be used; and

(3) the use of the mails was for the purpose of executing the scheme.[38]

▮▮▮ Schemes to fraudulently transfer assets are schemes to defraud, and fulfill the first element necessary to establish a violation of the mail fraud statute.[39] Furthermore, under Fifth Circuit precedent, violations of state law (including state common law) may constitute a fraudulent scheme the mail fraud statute proscribes.[40] Consequently, a violation of the Texas Uniform Fraudulent Transfer Act (TUFTA),[41] which Plaintiff has alleged here, constitutes fraud redressable under the mail fraud statute.[42] Additionally, the language of the mail fraud statute is broad enough to encompass any conduct that fails to re-

flect "moral uprightness, ... fundamental honesty, fair play and right dealing in the general and business life of members of society."[43]

▮▮▮ To fulfill the second element necessary to establish a violation of the mail fraud statute, the plaintiff need not prove that the defendant personally handled the offensive mailing.[44] Instead, the plaintiff only must present enough evidence to connect the defendant to the fraudulent scheme involving the use of the mails.[45] Indeed, in the Fifth Circuit, so long as one participant in a fraudulent scheme causes[46] a use of the mails in the execution of a fraud, all other knowing participants in the scheme are legally liable for the use of the mails.[47]

▮▮▮ A mailing need not be essential to the execution of the fraudulent scheme to satisfy the third element necessary to establish a violation of the mail fraud stat-

---

**37.** The elements necessary to establish violations of the mail and wire fraud statutes are essentially identical; hence, courts apply identical analyses to both the mail and wire fraud statutes. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). For convenience, the Court will refer to only the mail fraud statute, recognizing that the same analysis applies to the alleged wire fraud violations.

**38.** *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1129 (5th Cir.1988), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989); *United States v. Toney*, 598 F.2d 1349, 1351 (5th Cir. 1979), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *see also Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 428 (5th Cir.1990) (listing four elements of mail fraud as predicate offense for civil RICO purposes), *cert. denied*, —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

**39.** *United States v. Bishop*, 825 F.2d 1278, 1280 (8th Cir.1987); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 & 1101 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989); *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 651 (7th Cir.1984); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1272 (7th Cir.1989).

**40.** *Landry*, 901 F.2d at 429 n. 87; *McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1509 (D.N.J.1985).

**41.** Tex.Bus. & Comm.Code §§ 24.001–.013 (Vernon 1987).

**42.** *See McLendon*, 602 F.Supp. at 1507 (stating that scheme to violate statute contravenes public policy, which constitutes fraud redressable under mail fraud statute).

**43.** *United States v. Curry*, 681 F.2d 406, 410 (5th Cir.1982) (quoting *Blachly v. United States*, 380 F.2d 665, 671 (5th Cir.1967)).

**44.** *United States v. Finney*, 714 F.2d 420, 423 (5th Cir.1983) (citing *Milam v. United States*, 322 F.2d 104, 107 (5th Cir.1963)).

**45.** *Id.* (citing *Milam*, 322 F.2d at 107).

**46.** In the Fifth Circuit, a defendant "causes" a use of the mails when she does an act knowing that the use of the mails will follow in the ordinary course of business, or if she reasonably could foresee that the use of the mails would follow, even if she did not actually intend for the use of the mails to follow. *Toney*, 598 F.2d at 1355; *see R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1354 (5th Cir.1985) (stating defendant cause use of mails if use was reasonably foreseeable and mails used in execution of defendants' alleged scheme to defraud plaintiff). Whether the use of mails was reasonably foreseeable is a question of fact inappropriate for resolution before trial. *R.A.G.S.*, 774 F.2d at 1355.

**47.** *Toney*, 598 F.2d at 1355.

**400**

ute.[48] Rather, a mailing may constitute a violation of the mail fraud statute if the mailing is " 'incident to an essential part of the scheme.' "[49] Additionally, the defendant need not have made any affirmative misrepresentation to the plaintiff in the mailings.[50] Indeed, courts repeatedly have found mailings that served to "lull" the plaintiff into a false sense of security, postpone inquiries or complaints, or to lessen the suspect appearance of the fraudulent transaction are mailings in execution of the fraudulent scheme, violating the mail fraud statute.[51]

#### 4. Conspiracy

 In addition to pleading facts indicating prohibited activities, enterprise, and a pattern of racketeering activity, a plaintiff who states a cause of action under 18 U.S.C. section 1962(d) must allege the existence of a conspiracy if the plaintiff wishes to survive a motion to dismiss. Under RICO, one co-schemer is liable for the other co-schemers' predicate acts.[52] Indeed, upon joining a fraudulent conspiracy, each defendant becomes liable for the prior conduct of the earlier conspirators, and re-

mains liable for the subsequent conduct of the other conspirators.[53]

#### 5. Injury

 To survive a motion to dismiss on a cause of action for violations of any of the subsections of 18 U.S.C. section 1962, 18 U.S.C. section 1964 requires that the plaintiff plead injury. The plaintiff must prove that she was injured as a result of the defendant's violation of 18 U.S.C. section 1962.[54] For the purposes of a 12(b)(6) motion, any injury to business or property that a violation of 18 U.S.C. section 1962 causes sufficiently alleges an injury.[55]

#### B. Plaintiff's cause of action for violations of TUFTA

 TUFTA provides creditors with the ability to avoid a debtor's fraudulent transfers[56] and to recover a monetary judgment against the transferee of the asset as well as against the person for whose benefit the debtor made the transfer.[57] Under TUFTA, a debtor makes a fraudulent transfer when the debtor makes a transfer with the actual intent to "hinder, delay or defraud"

**48.** *Schmuck v. United States,* 489 U.S. 705, 710, 109 S.Ct. 1443, 1447, 103 L.Ed.2d 734 (1989) (citing *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954)).

**49.** *Id.* (citing *Pereira,* 347 U.S. at 8, 74 S.Ct. at 362).

**50.** *Carpenter,* 484 U.S. at 27, 108 S.Ct. at 321; *Formax, Inc. v. Hostert,* 841 F.2d 388, 390 (Fed. Cir.1988); *Curry,* 681 F.2d at 412 (quoting *United States v. Kent,* 608 F.2d 542, 546 (5th Cir. 1979), *cert. denied sub nom. Patrick Petroleum Corp. v. United States,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1981)); *United States v. Townley,* 665 F.2d 579, 585 (5th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982); *McLendon,* 602 F.Supp. at 1507.

**51.** *Landry,* 901 F.2d at 429; *United States v. Hewes,* 729 F.2d 1302, 1321 (11th Cir.1984), *cert. denied sub nom. Caldwell v. United States,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985); *Toney,* 598 F.2d at 1353–54; *United States v. Ashdown,* 509 F.2d 793, 800 (5th Cir.), *cert. denied,* 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975).

**52.** *United States v. Toney,* 598 F.2d 1349, 1355 (5th Cir.1979); *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1354 (5th Cir.1985).

**53.** *United States v. Westbo,* 746 F.2d 1022, 1025 (5th Cir.1984).

**54.** *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1100–01 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989); 18 U.S.C. § 1964(c) (1984). Under 18 U.S.C. § 1964(c), any person who suffers an injury because of another's violation of section 1962 may sue in federal court and may recover treble damages and the costs of the suit, including attorney's fees. *See also Sedima v. Imrex Co.,* 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985) (stating that plaintiff has standing to bring RICO civil action under 18 U.S.C. § 1964(c) if defendant's unlawful conduct injured plaintiff in her business or property).

**55.** *See R.A.G.S. Couture, Inc.,* 774 F.2d at 1355 (analyzing "racketeering injury" for purposes of 18 U.S.C. § 1962(c)).

**56.** Tex.Bus. & Comm.Code § 24.008 (Vernon 1987).

**57.** *Id.* § 24.009(b).

any of the debtor's creditors.[58] To survive a motion to dismiss, the plaintiff must plead facts that fairly notify the defendant of the transfer made with the requisite intent.

### C. *Plaintiff's cause of action for tortious interference with Plaintiff's business expectancies*

Texas law recognizes a cause of action for interference with contractual relationships and advantageous business relationships.[59] The elements of the tort of interference, all of which a plaintiff must allege in her complaint if the plaintiff is to survive a motion to dismiss, are (1) an economic right subject to interference; (2) willful and intentional acts of interference; (3) legal malice; (4) proximate cause; and (5) actual loss or damage.[60] The right to execute on a judgment debtor's assets to satisfy a judgment constitutes a valid economic expectancy that is subject to interference.[61]

### II. Applying the law to Plaintiff's Complaint

In the Complaint, Plaintiff alleges, upon information and belief, violations of each subsection of section 1962. Plaintiff alleges factual information indicating that each defendant benefitted in a particular way from the prohibited activities. Plaintiff also alleges facts about the enterprise, trust funds, and other accounts into which Schultz transferred his assets to prevent Plaintiff from realizing its judgment. For purposes of deciding this motion to dismiss, Plaintiff sufficiently has pleaded facts indicating that the defendants engaged in prohibited activities.

Plaintiff also has alleged facts indicating that the defendants were involved in a scheme to transfer Schultz's assets into judgment-proof accounts and to other people. Plaintiff thus has alleged the existence of an association-in-fact enterprise, one that exists separate and apart from the pattern of activity in which it engages and one that appears to be an ongoing organization. For purposes of deciding this motion to dismiss, Plaintiff thus sufficiently has pleaded facts indicating the presence of an association-in-fact enterprise.

To indicate the presence of a pattern of racketeering activity, Plaintiff has pleaded facts about the entire scheme of the fraudulent transfer of Schultz's assets, by which Schultz became judgment-proof. To satisfy the requirement of showing predicate acts, Plaintiff has alleged that Schultz communicated, via the mails and wires, at least twice with Plaintiff within a time period less than ten years. Plaintiff alleges that Schultz's communications, which Plaintiff alleges were for the purpose of lulling Plaintiff into a false sense of security, violated the mail and wire fraud statutes. Plaintiff also claims that the lulling communications were related to Schultz's fraudulent scheme in that they gave Schultz additional time to complete the asset transfers.

Plaintiff further alleges that the other defendants knew or should have known of the judgment against Schultz and that any assets Schultz had could be used to satisfy the judgment—from which the other defendants could infer that Schultz was transferring his assets to avoid paying the judgment. Plaintiff also alleges that all defendants reasonably should have foreseen that Schultz would use the mails and wires in connection with the fraudulent transfer scheme. For purposes of deciding this motion to dismiss, Plaintiff thus sufficiently has pleaded facts indicating the presence of a pattern of racketeering activities. Plaintiff's Complaint also sufficiently presents facts indicating conspiracy, a violation of TUFTA, and tortious interference with a contractual relationship.

---

**58.** *Id.* § 24.005(a).

**59.** *Leonard Duckworth, Inc. v. Michael L. Field & Co.,* 516 F.2d 952, 956 (5th Cir.1975); *Light v. Transport Ins. Co.,* 469 S.W.2d 433, 439 (Tex.Civ. App.—Tyler 1971, writ ref'd n.r.e.).

**60.** *See generally Light,* 469 S.W.2d at 438–40 (discussing tort of wrongful interference and applying law to facts of case).

**61.** *Wooten v. Loshbough,* 649 F.Supp. 531, 535 (N.D.Ind.1986).

Therefore, considering Plaintiff's Complaint in light of the applicable law and taking into account that some of the information regarding these transfers are peculiarly within the defendants' knowledge, the Court finds that the Complaint sufficiently notifies Defendants as to what Plaintiff's RICO, TUFTA, and tortious interference claims are and the grounds upon which they rest.[62] Accordingly, Plaintiff's Complaint satisfies the requirements of Federal Rules of Civil Procedure 8 and 9(b). To dismiss the Complaint or to require Plaintiff to file a more definite statement would be inappropriate.

## CONCLUSION

For the reasons stated above, the Court hereby DENIES Defendants' motions to dismiss and for more definite statement.

SO ORDERED.

---

**62.** *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).